### JOE WARREN V. MRS. PAULINE FREDERICHS.

#### No. 3243.

1. **Mandate—Transcript.**—It is not necessary on a second appeal in the same case that the mandate in the first be set out in the transcript on the second appeal. It seems that this court should take judicial notice of its action in the first appeal.

2. **Fact Case — Limitation of Ten Years.**— See testimony held insufficient to prove title to land by possession for ten years.

3. **Same — Possession Not Adverse.**— See testimony supporting the finding of the trial judge that the possession relied upon as vesting title to the land sued for in the plaintiff was not adverse to the owner.

4. **Same.**—Taking possession of land expressly to hold until it be put upon the market is not adverse; especially so when the owner recognizes the fact of such entry and agrees to give the party in possession the preference when the land should be offered for sale.

5. **Admissions.**—The declarations of parties in possession of land explaining their possession are admissible. Such admissions made after title had matured by limitation would be of less weight, and of little importance unless such as to work an estoppel.

6. **Judgment in Trespass to Try Title.**—Suit for land. The defendant pleaded title, but with indefinite description of the land claimed. Judgment for defendant in such case should be that plaintiff take nothing, and for costs against him.

APPEAL from Goliad. Tried below before Hon. H. CLAY PLEASANTS.

The opinion states the case.

*Daniel D. Claiborne* and *A. B. Peticolas*, for appellant.—1. Our statute of limitations of 1841, under which this suit was brought, provided that ten years peaceable possession and cultivation, use, or enjoyment thereof, without any evidence of title, should give to such naked possessor full property, preclusive of all other claims in and to 640 acres of land, including his or her improvements. Pasch. Dig., art. 4624, 2 ed., and note 1033, and authorities cited.

2. Ten years peaceable adverse possession of land by a person and those under whom he claims in privity of estate, who have resided upon, cultivated, used, or enjoyed the same for ten years before suit, entitles such person to 160 acres of land, including his improvements, precluding all other claims. Rev. Stats., arts. 3194, 3195.

*Fly & Hill* and *Glass, Callender & Proctor*, for appellee.

MARR, JUDGE, *Section B.*—This case was before the Supreme Court at the Galveston Term, 1890, and a judgment in favor of the appellee Pauline Frederichs, as rendered in the District Court, was then reversed and the cause remanded by the Supreme Court for another trial. Upon the last trial in the District Court a similar judgment was pronounced in favor of the defendant, and plaintiff Warren has again appealed.

The facts and issues in the case are very clearly outlined and explained in the opinion of the Supreme Court delivered upon the first appeal. It will not be necessary, therefore, to repeat these matters in stating the case at this time, but we refer to the former opinion as supplying any explanation which may be deemed important in comprehending the character of the suit or the questions involved. Warren v. Frederichs, 76 Texas, 647.

The appellee has moved to dismiss the present appeal, because the transcript does not contain a copy of the mandate of the Supreme Court issued upon its former judgment.

We think that the motion is without merit and should be overruled. We know of no provision of law or rule of the Supreme Court which requires the transcript to contain a copy of the mandate as a prerequisite to the right to appeal, or to perfect the same. The statutes indicate what shall be the proceedings in the court below upon the receipt of the mandate, and if it had not in fact been received before the trial below in this case, then we think that either party might have perhaps objected to the trial being had in the absence of the mandate. But this was not done. The transcript does not contain the former judgment of the District Court, as was the case in McAlpin v. Bennet, 21 Texas, 536. In that case, it is intimated that the proper practice would require the transcript to contain a copy of the mandate as evidence of the authority of the District Court to retry the case; but this seems to have been upon the ground that the transcript contained both judgments without any explanation. The appeal, however, was dismissed not on this account, but for the want of a final judgment. We think that the practice referred to is obsolete for want of observance, and that if the Supreme Court will take cognizance of the first judgment of the District Court, then that it will also take judicial notice of its own judgment which reversed and held for naught that of the court below and remanded the cause for another trial.

Upon the last trial of this case it was submitted to the court without a jury upon the evidence as adduced upon the first trial and such other evidence as either party might offer. This was done under an agreement of the counsel. The facts are substantially the same as before. The appellant introduced an additional witness, one Mrs. Jones, whose

testimony seems to have closed the break in the continuity of the possession of the plaintiff and those under whom he claims, which was adverted to by the Supreme Court upon the former appeal. We discover no other material change in the testimony.

In its conclusions of law and fact the District Court found, that "the plaintiff and those under whom he claims were in *continuous* possession of the land in controversy from the year 1857 until the plaintiff was evicted by the defendant, in May, 1884, but that such possession of the plaintiff and his vendor Elias Cassells was *not adverse* to the rightful owner and with no intention of acquiring title by limitation, and that both the plaintiff and the said Cassells bought the improvements upon the land for the purpose of holding possession until the land should be placed upon the market; that the possession of Cassells was known to the owners of the land and acquiesced in by them; that their agent and attorney, who resided in Goliad, was instructed that whenever the land was for sale to give Cassells the refusal before selling to any other person," etc.

The coverture of Mrs. Phoebe Angell would prevent the running of the statute of limitations to a part of the land up to the time when she and her husband conveyed the same to James Angell, but to what extent it will be unnecessary to decide, if there is sufficient evidence to support the finding of the court below that the possession of plaintiff and those under whom he claims was *not* adverse in legal contemplation. Rev. Stats., art. 3225. That is, therefore, the controlling question in the case.

We will insert a summary of the evidence upon this point. We think there is clearly sufficient evidence to show that the court below correctly characterized Cassells' possession, but of course it might be that both plaintiff's immediate vendor (W. H. McCaig) and plaintiff himself in fact held *adverse* possession of the land, though Cassells, under whom they derived whatever right they had otherwise, may not have done so. If that view of the case were sufficiently established, then plaintiff might be entitled to recover at least *some* portion of the land in controversy by reason of his own possession, connected with that of his vendor McCaig, without the assistance and independent of the possession of Cassells. The possession of McCaig, begun "in the spring of 1872," occurred more than ten years before the eviction of the plaintiff by the defendant, in May, 1884, in the action of forcible entry and detainer. We feel constrained, however, to hold, under well established rules, that the conclusion of the court below that plaintiff's possession was of the same character as that of Cassells, is not without evidence for its support.

James A. Burk testified, for the defendant, that upon the trial of the action of forcible entry before mentioned the plaintiff in his testimony stated, that "he only purchased the improvements with the privilege

of buying the land in dispute." H. L. Tally testified to a similar admission by Cassells under oath upon the trial of the same case in the County Court. Witness remembered distinctly the testimony of Cassells, but not that of Warren. M. T. Tippen, another witness for the defendant, testified, that either the plaintiff or Cassells made the above statement in his testimony before the County Court. Jonathan Payne testified, for the defendant, that he was present at the trial of the forcible entry suit and heard the testimony of both plaintiff and Cassells, and "that each of them swore that he purchased only the improvements on the land with the privilege of buying the land from the owner whenever it was put upon the market," etc. The plaintiff and Cassells respectively testified, that they did not make these statements imputed to them. The defendant also proved by C. Q. Ragland, that in the year 1869 or 1870, Cassells, in reply to a question asked by witness as to "why he had left his place on Turkey Creek," stated, that "he did not own the land on Turkey Creek," etc. [the land in dispute].

Appellee proved by E. R. Lane that he was Angell's agent in 1868 or 1869, and was instructed by Angell to protect the land, pay taxes on it, and sell, giving Cassells preference in buying. He continued as such agent until 1882, and would have sued at once had any one claimed adversely. That while he was agent Cassells was assessor of taxes a part of the time, and he (Lane) rendered the land for taxes as the property of Angel; but one year he forgot it, and Cassells reminded him of it and took assessment from him as Angell's agent. Cassells, as assessor, had his office in a room adjoining his (Lane's) law office. The testimony of Jonathan Payne is of the same tenor substantially, he succeeding Lane as agent in 1882.

It also appears that neither Cassells nor plaintiff ever rendered the land for taxation or paid any taxes thereon.

The admissions of a party against his own interest are of course testimony against him in every case. If, however, the admission that he did not claim the land in dispute should be made after his right thereto had become perfect by the requisite period of *adverse* possession, as it would be by a grant from the rightful owner, then the admission, unless in a case where it might bind as an estoppel, would be of very little importance—certainly of much less gravity and force than if it had been made at an earlier date and as explanatory of the occupancy before the bar was complete. The difficulty, however, in the present case in the way of the plaintiff is, that the character of his possession and that of Cassells is contested through its entire duration at least by circumstances; and it is therefore by no means conceded or proved with certainty that the possession had been adverse even prior to the time he made the statement in reference to his claim as attributed to him by the witnesses for the defendant. In our opinion, it is competent under such circumstances to consider his statement like any other admission

as evidence in determining the character of his possession, and whether in fact he had ever claimed or held the land under a claim of right independent and antagonistic to the true owner. Upon an analogous question it was said in one case, that "a single lisp of acknowledgment by the defendant that he claims no title, fastens a character upon his possession which makes it unavailable for ages." Calvin v. Burnet, 17 Wend., 564. The Supreme Court say, upon the former appeal in this case, that "there is some doubt made by the evidence as to whether the land was at any time occupied in hostility to the true owner, and as to whether the occupants claimed or bought or sold anything but the improvements." 76 Texas, 649. As we have already shown, the District Court upon the last trial decided that in fact they only bought the improvements.

Looking to the acts and declarations of Cassells as developed in evidence, it is not improbable that both he and the former occupant had "squatted" upon the land to exercise "squatter sovereignty" over the land temporarily, or upon his part (after having acquired the right of possession merely as against the prior possessor) to enjoy and use the land for the time being until he could either sell his possessory right or obtain title from the owner. There was evidence also that he was to be accorded preference in purchasing the land when it should be put upon the market. McCaig paid him but $50 for his claim to the land or improvements, and the consideration paid by the plaintiff to McCaig was little more than nominal compared with the value of the land. Under such circumstances, the conclusion is not unwarranted that they bought only the improvements or right of possession, and simply stepped into Cassells' shoes, expecting "the privilege of buying the land." Although the payment of taxes is *not* necessary to support limitation of ten years, still the failure to do so after the expiration of that period is a significant circumstance in ascertaining the character of the claim asserted in such cases.

We conclude that we would not be authorized to disturb the finding of the court as to the character of the possession upon which the plaintiff relies for a recovery. Chance v. Branch, 58 Texas, 490; 28 Texas, 380; Mhoon v. Cain, 77 Texas, 316.

Certain statements and admissions of Stump Warren, a brother of the appellant, made to one Fred Hopf, while said Warren was in possession of the land under the appellant, were introduced in evidence over the objection of the plaintiff. This evidence was clearly hearsay, and was not binding upon the appellant for other reasons, as held by the Supreme Court in reference to similar statements of another tenant of the plaintiff upon the former appeal. There is, however, no proper bill of exception to the admission of this testimony, and besides, it appears that the court did not attach any importance to it. The bill re-

lied upon is the same as taken upon the former trial of the case, and by agreement of counsel the attempt is made to call it back to life again. This is not permissible. Anyhow, we think that the error is harmless. It was expressly decided upon the former appeal that the deed from Solomon Hall to William Walker was admissible as an ancient instrument, and this will dispose of the second assignment of error, which again presents the same question.

Appellant also objects to the character of the judgment rendered below. The defendant did not ask any affirmative relief, yet the court adjudged that she should recover of the plaintiff "the premises in controversy." As these "premises" are not described in the judgment, as should have been done, and as there is some doubt under the pleadings as to what they really are, it might be that under the judgment as rendered the defendant would obtain more land than she claimed in the suit or proved title to. Besides, it may be doubted if her answer would authorize the judgment in this respect.

We think that the judgment should be reformed so as to simply adjudge that the plaintiff take nothing by his suit, etc., and that in all other respects it should be affirmed.

*Reformed and rendered.*