BROWN et al. v. FISHER. (No. 64.)

(Court of Civil Appeals of Texas. Beaumont. Feb. 15, 1917. Rehearing Denied March 28, 1917.)

1. ADVERSE POSSESSION ☞112 — BURDEN OF PROOF.

In trespass to try title, defendant, claiming by adverse possession, has the burden of proving that he was in peaceable and adverse possession for ten years prior to the time when suit was brought, when it was agreed that the record title was in the plaintiffs.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 651, 653, 654, 657–659, 661–663, 665, 666.]

2. ADVERSE POSSESSION ☞114(1)—EVIDENCE —SUFFICIENCY.

Evidence held sufficient to warrant the jury in finding that defendant in trespass to try title had had ten years' peaceable and adverse possession prior to the time of bringing suit.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683.]

3. ADVERSE POSSESSION ☞23—ACTS OF POSSESSION—SUFFICIENCY.

Mere felling or cutting timber on land would not in itself be sufficient to constitute adverse possession as against the true owner, but such acts when done for the purpose of clearing the land to permit use for farming purposes and as a home may show adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 112, 113.]

4. ADVERSE POSSESSION ☞29—CHARACTER OF POSSESSION—REQUISITES—SUFFICIENCY.

The character of use to which land is put and acts done by one in possession must be such as to reasonably apprise persons in general in the community or the true owner of the land that the possessor is claiming the right to appropriate it to his own use in hostility to the claim of the true owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 124, 125.]

5. TRESPASS TO TRY TITLE ☞59—DEFENSES— ADVERSE POSSESSION — IMPROVEMENTS IN GOOD FAITH—QUESTIONS FOR JURY.

Though defendant in trespass to try title had a deed to land upon which he entered, he was not entitled to go to the jury on the issue of improvements made in good faith where before making improvements he had notice that his deed was void.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 90.]

6. APPEAL AND ERROR ☞1062(1)—HARMLESS ERROR—SUBMISSION OF ISSUE.

In trespass to try title, error in submitting issue of improvements in good faith by reason of defendant's knowledge of defect in his title was not prejudicial, where the jury upon sufficient evidence found in his favor on the issue of adverse possession.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

7. ADVERSE POSSESSION ☞116(1) — INSTRUCTIONS—SUFFICIENCY.

In action in trespass to try title under defense of adverse possession, instruction that adverse possession means actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another is sufficient and further requested instructions that the mere clearing of timber from land with the intention of subsequently erecting fences and houses does not constitute adverse possession, and that the adverse possessor must inclose the land and use, cultivate, or reside on it, were properly refused as tending to confuse the jury.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66.

For other definitions, see Words and Phrases, First and Second Series, Adverse Possession.]

8. ADVERSE POSSESSION ☞109—COMPLETION OF TITLE—ATTORNMENT AS TENANT—EFFECT.

If defendant in trespass to try title had complete title by limitation of ten years, his act in thereafter attorning to the true owner as his tenant did not effect a divestiture of title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 629–635.]

9. ADVERSE POSSESSION ☞29—SUFFICIENCY OF POSSESSION — NECESSITY OF CLAIM OF RIGHT.

One who enters on land with knowledge that he has no title and that another has, but with the intention to occupy in hostility to all the world, and who does so occupy openly and visibly, is in adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 124, 125.]

10. ADVERSE POSSESSION ☞9—ACQUIREMENT OF TITLE—LANDS OF MUNICIPALITY.

In spite of Vernon's Sayles' Ann. Civ. St. 1914, art. 5683, providing that no person shall ever acquire by adverse possession any title to grounds belonging to any town donated or delegated for public use to the town, a person can maintain adverse possession and acquire title against the city as to outlying wild and unimproved land covered with timber and brush.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 42, 50.]

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by O. A. Brown and another against

Wesley Fisher. Judgment for defendant, and plaintiffs appeal. Affirmed.

Stevens & Stevens, of Houston, for appellants. E. B. Pickett, Jr., of Liberty, for appellee.

HIGHTOWER, C. J. This was an action of trespass to try title, instituted in the district court of Liberty county by C. A. Brown and A. E. Kerr, appellants, against Wesley Fisher, appellee, to recover six acres of land out of block No. 46 in the town of Dayton, formerly West Liberty, Liberty county, Tex., consisting of the west half of said block. Suit was filed on the 4th day of October, 1913. C. A. Brown, who was a tenant in common with A. E. Kerr, filed a suit in his own name at first, and afterwards, on the 6th day of December, 1915, the other cotenant, A. E. Kerr, was made a party plaintiff. Appellee, Wesley Fisher, answered by a plea of ten years' limitation, and also a plea for improvements in good faith. Appellee also set up a cross-action, which was met by a plea of not guilty on the part of appellants.

The case was tried with a jury upon special issues submitted by the court. After the return of the verdict upon special issues, judgment was entered in favor of appellee, from which appellants, after their motion for new trial was overruled, have appealed to this court.

Appellants' first assignment of error is:

"(I) Because the court erred in its charge, wherein it submitted in the second special issue to the jury to determine whether or not the defendant had peaceable and adverse possession of the land for ten years prior to the 11th day of November, 1909, since the undisputed proof showed that plaintiffs held the record title to the land, that Wesley Fisher erected no permanent improvements thereon, and did not begin to use, occupy, cultivate or enjoy the land adversely to the plaintiffs for the full period of ten years prior to November 11, 1909; said error having been previously pointed out to the court by seasonable objections prior to giving the said instruction.

"(II) Because the court erred in the third paragraph of its charge in submitting to the jury an issue as to adverse possession of the defendant for a period prior to October 14, 1913, since the undisputed evidence showed that the defendant failed to enter upon the land under a claim of right and adversely hold the same, which error in the charge of the court was seasonably pointed out and objected to by the plaintiffs before the giving of said charge to the jury."

Appellants' first proposition under this assignment is as follows:

"While the clearing of land may constitute evidence of an adverse claim, there can be no exclusive possession until the land is actually inclosed and used, hence the statute of limitation did not begin to run until Wesley Fisher, about Christmas, 1909, inclosed the land and planted the garden."

In order to a proper disposition of the above assignment, it is necessary to state, at least in substance, the evidence bearing upon appellee's claim of title to the land in controversy, based upon his claim of peaceable and adverse possession thereof for a period of ten years prior to November 11, 1909, but it will not be necessary to quote this testimony in detail.

[1] At the outset, we might say that it was incumbent upon appellee, Wesley Fisher, to prove in the trial court that he was in peaceable and adverse possession of the land sued for ten years prior to November 11, 1909, because it was agreed in the trial court that the record title was in appellants, and that they were entitled to recover the land from appellee, unless title had vested in appellee by virtue of the ten-year statute of limitation; and it was necessary to show that title had so vested in appellee prior to November 11, 1909, because on that date he executed and acknowledged a written contract or agreement of tenancy to J. H. Herndon and E. J. Davis, appellants' predecessors in title, and, of course, the execution of such contract of tenancy had the effect in law to cut off any further claim of adverse possession on the part of appellee, subsequent to November 11, 1909.

On the question of adverse possession by appellee, it might be stated that his own testimony, and that of his witness, W. B. Jones, was the only really material testimony adduced on the trial for appellee, and it might also be correctly stated that the only testimony introduced by appellants on the issue of a material and satisfactory character was that of the witnesses, Dave Martin and Gus White, and it might be stated that appellants' witness, W. M. Babcock, testified to some few circumstances that would have a tendency to show that appellee had not had adverse possession of the land in controversy for the full period of ten years prior to November 11, 1909.

[2] We have very carefully gone over the testimony of each witness bearing on the issue of appellee's claim of adverse possession, and have concluded that the evidence was sufficient as to warrant the jury in finding, as they did, that appellee had ten years' peaceable and adverse possession of the land in controversy prior to November 11, 1909. To state such evidence, in substance, it amounts to about this: Appellee, Wesley Fisher, moved from Ft. Bend county, Tex., to Liberty county, Tex., in the fall of 1899, either in September or about the first of October, and he shortly thereafter returned to Ft. Bend county and remained there about two weeks, after which time he came back to Liberty county, at Dayton, and, according to his testimony and that of his witness W. B. Jones, he immediately, or very soon after his return to Dayton, met W. M. Babcock, who then resided at Dayton, Liberty county, and appellee testified, in substance, and so does his witness W. B. Jones that he (appellee) entered into some kind of an agreement with Babcock, by which Babcock agreed to sell appellee the land in controversy for a consideration of $75, $5 of which appellee at the time paid Babcock; that Babcock agreed to make appellee a deed, and relying upon

such agreement with Babcock, appellee immediately entered upon the land in controversy, and commenced to clear the same, that is, fell the timber, cutting and burning the brush, with a view to clearing up and putting in a farm on the land. It would be next to impossible for us to tell from the testimony of appellee alone just when it was that he entered upon this land and commenced clearing the same under the claimed agreement with Babcock, because the testimony of appellee himself on that point is not at all clear or certain, but, considered as a whole, is rather contradictory. However, looking to the testimony of his witness Jones, it appears with reasonable certainty that the entry upon the land by appellee, under this agreement with Babcock, was made about the middle of October, 1899, or at least not later than November 1, 1899. The witness Jones testified that he was present when the agreement between appellee and Babcock for the purchase of the land by appellee was made, and that this agreement was some time about the middle of October, 1899, and witness saw appellee pay Babcock the $5, and further testified that appellee thereafter immediately entered upon the land in controversy and commenced to clear and improve the same, for the purposes of a home and farm. The land in controversy was wild thicket land at the time appellee entered upon the same, was not in the actual possession of any one, and had no improvements of any character upon it; in fact, the land is referred to in the record as a thicket prior to the entry of appellee. The evidence of appellee is reasonably susceptible of the construction that from the time he first entered upon the land, he continuously and regularly kept up his work of clearing the brush and timber from the same, and that by the first of December, perhaps, of the same year, had enough of the land cleared and the brush burned to give room for his house, and for the purposes of a garden, and that he planted a garden that same winter, and that some time in the spring of the following year the frame of his house had been erected, but the testimony is indefinite as to the time the frame of the house was up. The testimony is certain, however, that appellee did not actually move in this house with his family until about a year after he first entered upon this land, but during all of that period, the testimony is reasonably clear to the effect that appellee was continuously and regularly clearing the land and fencing the same, as cleared, and that during the year 1900 he raised a crop on the land, consisting of corn, peas, sorghum, etc., and he testified, in substance, that during the first year he raised enough corn for his horses, and some other things, and that during all the year 1900 he was constantly working on the place, clearing, fencing, and working on his house, and moved his family into the house about one year after his first entry upon the land. The

evidence of appellee and that of his witness Jones is definite and certain to the effect that after appellee first started his improvements on the land his possession was continuous, and the same was cultivated each and every year thereafter, and more and more of the land was cleared each year, until at the time of the trial there was in cultivation approximately six acres. Improvements placed upon the land by appellee altogether consisted of his dwelling house, which was a house made of lumber, and also a log house, and a small crib or two, a well, garden, and the cleared portion, which was fenced and used for farming purposes. Appellee testified that he had at all times claimed the land in controversy from the time he made the trade with Babcock, and that he intended to reside upon and hold the same against the claim of any one, and until he should be removed by law. He was substantially corroborated in this respect by the witness W. B. Jones. We believe that the foregoing states substantially the material facts adduced on the trial in behalf of appellee's claim of title by limitation.

According to the testimony of appellants' witness Dave Martin, appellee did not enter upon the land until approximately 2 or 2½ years after appellee came to Liberty county, and according to the testimony of the appellants' witness Gus White, appellee did not enter upon the land, or at least never commenced to clear or improve the same until a year or so after appellee came to Liberty county. The testimony of both these witnesses, however, while it tends to negative the fact that appellee was in possession of the land for 10 full years prior to November 11, 1909, is not certain and altogether satisfactory, and we cannot say that the jury was not warranted in accepting the testimony of appellee and his witness W. B. Jones on this point. Indeed, we would have no hesitancy in reaching the conclusion that the testimony was abundantly sufficient to warrant the jury in finding that appellee entered upon the land prior to November 1, 1899, and the only difficulty we have encountered in passing upon this assignment is as to the sufficiency of the character of the acts done by appellee upon the land, and the use to which the same was put by him during the first few months after his entry, to constitute adverse possession thereof in contemplation of law.

[3] We agree with the contention of appellants that the mere felling or cutting of timber on land would not, in itself, be sufficient to constitute adverse possession as against the true owner, and we are aware that the appellate courts of this state have regularly so decided, but the entry by appellee upon this land was not for the sole purpose of felling the timber, but his main object was to clear the land for the purpose of using and enjoying and cultivating the same as a farm, and to make the same his home, and this, it would appear from the

evidence, he proceeded regularly and continuously to do, though his progress in that direction was slow, and his improvements were limited and humble; but taking into consideration, as we should, the nature and character of the land in controversy, it being at the time of appellee's entry wild and covered with thick growth of timber and brush, we cannot say that appellee did not proceed in such manner and in such way in his efforts to clear and improve and use the same as to reasonably indicate to the true owner that it was appellee's purpose to claim and use the land as his own, in hostility to the true owner.

[4] We understand that it has never been decided in this state, as a matter of law, just what is necessary to constitute adverse possession of land; in other words, leaving the general language of the statute on the point out of consideration, the courts of this state have never undertaken to say just what facts in detail were required to constitute adverse possession of land. They have consistently, and we think correctly, held that the character of the use to which land is put, and the acts done upon the same by one in possession, must be such as to reasonably apprise persons in general in the surrounding community, or the true owner of the land, that such person is claiming the right to appropriate the land to his own use, in hostility to the claim of the true owner. It is shown by the record in this case that the land in controversy was adapted to farming purposes when cleared, and it would seem therefore that one of the essential elements of adverse possession, to wit, the use to which the land was adapted, was made by appellee, though, as stated above, the progress made by him in that direction was slow; but we are not willing to say, as a matter of law, that the character of appellee's possession of this land, after entry, and the use to which the same was put by him, were not sufficient to apprise the true owner of the fact that this land was being adversely claimed by appellee, in contemplation of the statute.

What we have said has reference to section 1 of the first assignment, and we will discuss section 2 thereof in connection with appellants' fifth assignment of error. Taking the evidence as a whole, we believe that the trial court did not err in charging the jury, as pointed out by the above assignment, and such assignment is overruled.

[5] Appellants' second assignment of error challenges the correctness of the court's action, in submitting to the jury, as it did, the issue of improvements in good faith interposed by appellee, for the reason that the undisputed evidence showed that appellee, prior to the time he put any improvements whatever on the land in controversy, knew that Babcock, from whom he claimed to have purchased the same, had no title thereto, and could not convey any to appellee. We think

this assignment is well taken, for the reason stated by appellants, because, as we read the statement of facts, the evidence is almost conclusive to the effect that no improvements were placed upon the land by appellee prior to the time he was informed by Babcock that he (Babcock) could not convey him a title to the land, and for this reason we think the court should not have submitted to the jury the issue of improvements in good faith.

[6] But in view of the jury's finding on the issue of adverse possession in favor of appellee we think that the court's error in submitting the issue of improvements in good faith was entirely immaterial, and could not have prejudiced appellants in any way. It is true the jury found that appellee's improvements were placed on the land in good faith, and it is probable that the jury so believed, not being advised by the charge what was required to constitute improvements in good faith; but, as above stated, we think that no prejudice resulted to appellants in consequence of this charge, and the assignment is overruled.

Appellants' third assignment of error complains of the action of the trial court in refusing to give to the jury the following special instruction:

"'Gentlemen of the jury: You are instructed that the mere clearing of timber from the property with the intention of subsequently erecting fences and houses upon the property does not constitute adverse possession, and that the law contemplates, in order for a person to take adverse possession of land, he must inclose the same, using it, or cultivating it, or reside upon it,' for the reason that the evidence showed that the defendant, according to his own testimony, and the testimony of others, made clearings upon the land at various times, and there was evidence showing that there were no fences or houses erected upon the land until within ten years from the 11th day of November, 1909, which was the date of the attornment by defendant as a tenant, and since the court, in its general charge to the jury, failed to properly define the law of adverse possession as applied to the facts of this case, all of which errors were pointed out to the court by objections before the giving of said charge, by requesting the foregoing special instruction.

"(V) Because the court failed to define the law of adverse possession, as applied to the facts of this case, simply defining it as an abstract proposition, to wit, that by adverse possession is meant an actual and visible appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another, whereas the plaintiffs, by special instruction requested by them, which was refused by the court, pointed out to the court the necessity of instructing the jury that the law contemplates, in order for a person to take possession of land, he must inclose the same, use it, or cultivate it, or reside upon it, as shown by the said special instruction requested by the plaintiff, which was refused by the court.

"(VI) Because the court erred in failing to instruct the jury that the mere clearing of timber from property with the intention of subsequently erecting fences and houses upon the property does not constitute adverse possession, as set forth by the said special instruction of plaintiffs, which was refused by the court."

Appellants' proposition under the above assignment is:

"The mere clearing of timber from land with the intention of subsequently erecting fences and houses upon the same does not constitute adverse possession."

The trial court did instruct the jury:

"By adverse possession is meant an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

[7] This instruction was a literal copy of the statute itself, and of course was correct, and we believe that, as applied to the facts of this case, the same was sufficient on the issue of appellee's adverse possession, and we think that if the trial court had given the above special instruction requested by appellants, the same would have probably been misleading in this particular case, because the jury would likely have gotten the idea from such charge that the period of time during which appellee was engaged in clearing the land, and burning the brush, prior to his actually getting the same inclosed, and actually cultivating the same, could not be taken into consideration by the jury in computing the period of time that appellee was in possession of the land; in other words, the jury would likely have gotten the idea from such charge that in answering the question as to whether appellee was in adverse possession for a period of ten years prior to November 11, 1909, they would only consider such time as elapsed after appellee had actually inclosed the land, or had the same in actual cultivation. Under this assignment appellants cite Richards v. Smith, 67 Tex. 610, 4 S. W. 571, Pendleton v. Snyder, 5 Tex. Civ. App. 427, 24 S. W. 364, and Freedman v. Bonner, 40 S. W. 49. We have carefully examined each of these authorities, and we find that they do not sustain appellants' contention that an actual inclosure under all circumstances is necessary to constitute adverse possession of land. It is true that the court, in each of these cases in discussing the question of adverse possession, stated that an inclosure of land was one of the strongest evidences of an adverse and exclusive possession, but the court did not say in either case that an inclosure was indispensable in order to constitute adverse possession. In fact, a careful analysis of the case of Richards v. Smith, supra, will disclose the fact that the court in that case announced that an inclosure was not necessary to constitute adverse possession of land. Without discussing in detail either of these authorities, we hold that neither of them sustains the broad doctrine contended for by appellants here. As stated above, we believe that the court's charge on the issue of adverse possession was sufficient in this particular case, and that to have given the special charge requested would have probably mislead the jury. The assignment is overruled.

Appellants' fourth assignment of error is:

"(VII) Because the court erred in rendering judgment for the defendant, for the reason that the jury answered the first special issue submitted to them in the affirmative; that is to say, that the defendant had leased the land from the plaintiffs on the 11th day of November, 1909, which answer was inconsistent with the answer of the jury to the third special issue, wherein they answered that the defendant had been in adverse possession of the land for ten years prior to October 4, 1913.

"(VIII) The jury having found, in answer to special issue submitted to them, that the defendant leased the land in controversy from Herndon, under whom plaintiffs held, on the 11th day of November, 1909, and that he held and occupied the land under said lease from that period as the tenant of said Herndon, and the plaintiffs, hence the defendant cannot dispute the title of the plaintiffs and those under whom they hold, hence the court erred in rendering judgment for the defendant, and a new trial should be granted."

The proposition under this assignment is:

"A tenant cannot dispute his landlord's title without first having reinvested his landlord with possession."

[8] We are aware of the doctrine that a tenant cannot set up title adverse to his landlord, unless it be clearly shown that the tenant repudiated his contract of tenancy with the knowledge of his landlord, and that sufficient length of time lapsed after such repudiation to authorize the interposition of the bar of limitation; but the jury in this case found that appellee was in peaceable and adverse possession of the land in controversy for the full period of ten years prior to November 11, 1909, which was the date of the acknowledgment of tenancy by appellee, and therefore if the jury's finding on that issue is supported by the evidence, which we hold it is, the acknowledgment of tenancy after the title by limitation was complete would not have the effect to divest title so acquired by appellee out of him, and such acknowledgment of tenancy could only be considered by the jury in passing upon the question of whether the possession theretofore held by appellee had been adverse, but the same could have no other effect. Wickizer v. Williams, 173 S. W. 288; Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Thayer v. Clark, 47 Tex. Civ. App. 61, 104 S. W. 196; Williams v. Rand, 9 Tex. Civ. App. 631, 30 S. W. 511. The above assignment is overruled.

Appellants' fifth assignment of error, which we do not copy in full, as it is unnecessary to do so, is to the effect that the undisputed evidence in the case shows that appellee was never in adverse possession of the land in controversy, for the reason that his possession thereof was not "commenced and continued under claim of right." The proposition under this assignment is:

"A party who enters upon land for the purpose of acquiring a title by limitation is not in adverse, peaceable, and hostile possession of the land."

[9] We understand that the statute of this state says that before a possessor of land by reason of his possession alone can acquire title thereto by limitation, such possession must have commenced and been continued

"under a claim of right." Appellants cite, under this assignment, the case of Stevens v. Pedregon, 106 Tex. 576, 173 S. W. 210. We are familiar with this case cited by appellants, and we concede that certain portions of the opinion of the Supreme Court in that case, speaking through Chief Justice Brown, would seem to sustain the contention of appellants to the effect that a possession of land in order to vest title in the possessor must have been commenced and continued under a claim of right, but when we consider the opinion as a whole, we have concluded that Judge Brown did not intend to hold that such a possessor entering upon land would have to believe that he had some character of title, or legal or equitable right to enter upon and claim the same; but if the court in that case did so intend to hold, then we say that the opinion is out of harmony, and in complete variance with every other opinion from the appellate courts of Texas on that point, which had been rendered prior to the decision in the case of Stevens v. Pedregon, supra. We note that Judge Brown, in the Stevens v. Pedregon Case, cites, as sustaining the conclusion reached in that case, the cases of Sellman v. Hardin, 58 Tex. 86; and Murphy v. Welder, 58 Tex. 235. From reading these two cases cited by Judge Brown we find that neither of them touches this question here raised by appellants. Nothing whatever was said in either of those cases cited by Judge Brown relative to any claim of right that must have been made by the adverse possessor at the time he entered upon the land in controversy in those cases. Each of those cases simply dealt with the character of the use, acts of ownership, etc., that were made by the possessors of the land in those cases, and when we read the Stevens-Pedregon Case as a whole, we are forced to the conclusion that Judge Brown simply meant to hold in that case that the uses to which the land was put by the possessor in that case, the character of his improvements, etc., were not sufficient to constitute adverse possession in contemplation of law. Judge Brown, as the bench and bar of this state admit, was an able jurist, and at the time of his opinion in the Stevens v. Pedregon Case, supra, had had many years' experience on the Supreme Court of this state, and we believe that if it had been his intention to overrule the long line of decisions, some of which were by the Supreme Court of this state, bearing on this point, he would have said so frankly, but instead, he never even mentioned any of the authorities which had theretofore held to the contrary on the proposition here asserted by appellants. Some of these authorities are Charle v. Saffold, 13 Tex. 112; Word v. Drouthett, 44 Tex. 369; Holland v. Nance, 102 Tex. 183, 114 S. W. 346; Smith v. Jones, 103 Tex. 637, 132 S. W. 469, 31 L. R. A. (N. S.) 153; Craig v. Cartwright, 65 Tex. 423; Cox v. Sherman Hotel Co., 47 S. W. 808. See, also, Link v. Bland, 43 Tex. Civ. App. 519, 95 S. W. 1110. In this last case (Link v. Bland) the only point for decision was the very question raised by this assignment; that is, is it necessary, in order to acquire title by limitation, for the possessor of land to enter upon the same "under a claim of right"? The opinion in the case was by the Galveston Court of Civil Appeals, speaking through Justice Reese, and many of the authorities bearing upon the question are there cited, and the conclusion is reached in the following language:

"Under Revised Statutes of 1895, art. 3349, defining adverse possession as the actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another, a person who enters upon land with knowledge that he has no title, and that another has, but with the intention to occupy it in hostility to all the world, and who does so occupy openly and visibly, is in adverse possession."

We understand that there are, perhaps, several cases now pending before our Supreme Court involving the question raised in this assignment, but until our Supreme Court sustains the point here raised, we shall continue to follow the rule heretofore laid down by our appellate courts whenever that question arose. We admit that there might be room for the contention of appellant on this point, and if the question were raised for the first time here, we confess that it might give us some difficulty, but we believe that the rule laid down heretofore has become a rule of property in this state, and should not be, at this late day, disregarded, unless the Supreme Court of this state should so hold. The assignment is overruled.

Appellants' sixth assignment of error raises this question: The land in controversy belonged to the city of Liberty until the 17th day of September, 1901, on which date said city conveyed the same to M. D. Rayburn, from whom the title passes, by mesne conveyances, to appellants. Appellants contend that during the time title to this land was in the city of Liberty, limitation did not commence to run in favor of appellee, and that therefore appellee was not in adverse possession, and that therefore sufficient time did not elapse between September, 1901, and November 11, 1909, to give title to appellee by limitation of ten years. The proposition under this assignment is:

"Title to ground or land belonging to a city or town cannot be acquired by adverse possession."

[10] If the proposition thus broadly stated by appellants be correct, then appellee could not have title in this case, and this assignment would have to be sustained. The only authority cited by appellants under this proposition is article 5683, Vernon's Sayles' Texas Civil Statutes. This article reads as follows:

"The right of the state shall not be barred by any of the provisions of this chapter, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any part or portion of any road, street, sidewalk or

grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city or county in this state: Provided this law shall not apply to any alley laid out across any block or square in any city or town."

It is not contended by appellants that the land in controversy was ever used or was ever intended to be used by the city of Liberty for any public purpose whatever, or that any portion of the same claimed adversely by appellee was ever a street of such city, or ever intended to be; but the undisputed evidence throughout the whole record is that this land was wild, unimproved land, covered with timber and brush prior to appellee's entry on the same, and putting the same in a farm. Under such circumstances, limitation ran against the city of Liberty in favor of appellee during the period of time between appellee's entry upon the land and his adverse possession thereof down to the date that the city of Liberty conveyed the same, and continued to run in favor of appellee until the 11th day of November, 1909. See Johnson v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995; Hardin County v. Nona Mills Company, 112 S. W. 822. There are other authorities in this state on the same point, but the case first above cited clearly holds to the contrary of appellants' contention in this assignment, and we approve the holding, and the reason for same. The assignment is overruled.

What we have said disposes, practically, of every contention made by appellants, and, finding no reversible error in the record, we are of opinion that the judgment of the lower court should be affirmed; and it is so ordered.