HOUSTON OIL CO. OF TEXAS v. HOLLAND. (No. 197.) *

(Court of Civil Appeals of Texas. Beaumont. May 30, 1917. On Motion for Rehearing, June 27, 1917.)

1. ADVERSE POSSESSION ⬤⟿115(7) — QUESTION FOR JURY.

In trespass to try title, plaintiff claiming title under the ten-year statute of limitations, the court properly submitted to the jury the question of plaintiff's claim of adverse possession to more of the land than the six acres which had been used and cultivated for a number of years by plaintiff and his predecessors, plaintiff having claimed all the land at all times.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 693.]

2. ADVERSE POSSESSION ⬤⟿85(3) — NONPAYMENT OF TAXES.

Though defendant showed on plaintiff's cross-examination that plaintiff had·not paid taxes on any portion of the land, that did not show conclusively that plaintiff was not claiming adversely.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 499, 500, 503, 688–690.]

3. ADVERSE POSSESSION ⬤⟿18—ACTUAL OCCUPANCY.

Actual occupancy in the way of a residence upon land is not necessary to constitute adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 96–98.]

4. APPEAL AND ERROR ⬤⟿930(1) — REVIEW — EVIDENCE.

After verdict for plaintiff, the appellate court must assume that the testimony for plaintiff is true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755, 3756, 3758.]

5. ADVERSE POSSESSION ⬤⟿97—POSSESSION OF PART OF TRACT.

Where plaintiff held possession for at least 12 years of a field of from 5 to 6 acres in a tract of 160 acres, claiming the whole tract, and using the field for the purposes to which it was adapted, plaintiff secured title to the whole tract by adverse possession; the owner of the land being bound to take notice that plaintiff's claim was hostile to and inconsistent with any claim of right or title by the owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 537–541.]

6. APPEAL AND ERROR ⬤⟿1062(3)—HARMLESS ERROR—WITHDRAWAL OF ISSUE.

In trespass to try title, plaintiff claiming title by adverse possession, where the trial court could have properly instructed a verdict for plaintiff, its action in withdrawing from the jury, after having submitted it, the issue whether plaintiff's possession of the tract which he had under fence was sufficient to put defendant on notice that plaintiff was claiming 160 acres, was harmless to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4214.]

Appeal from District Court, Tyler County; A. E. Davis, Judge.

Action by J. H. Holland against the Houston Oil Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

Parker & Kennerly, of Houston, for appellant. Thomas & Wheat, of Woodville, for appellee.

HIGHTOWER, Jr., C. J. This was an action of trespass to try title brought by appellee, J. H. Holland, against appellant, Houston Oil Company of Texas. Appellee prayed in his second amended original petition, on which the case proceeded to trial, for recovery of a specific tract of 160 acres of land out of the N. H. Hooe or Hove (it is immaterial which is correct) survey of 640 acres in Tyler county, or, in the alternative, that he recover an undivided 160 acres out of said survey, to be run out so as to include his improvements.

Appellee based his claim of title to the 160 acres of land sued for by him on the 10-year statute of limitation. On the trial of the case it was agreed that the appellant owned the record title to all of the land in controversy, and that appellee could not recover, unless appellee had acquired title to the land sued for by him under the 10-year statute of limitation.

The case was tried with a jury, and the following issue only was finally submitted to the jury, to wit:

"Has the plaintiff, J. H. Holland, had and held peaceable and adverse possession of the land sued for, cultivating, using, or enjoying the same, for a period of ten consecutive years before the commencement of this suit, and after defendant's cause of action accrued?"

To this issue the jury answered "Yes." Upon bringing in a verdict in favor of appellee, motion was made in his behalf for judgment thereon, which was granted, and judgment was rendered in his favor for the specific 160 acres claimed in his petition; it having been agreed by the parties to the cause that appellee, if entitled to recover any 160 acres on the tract of land in controversy, was entitled to recover the 160 acres claimed by him specifically.

Appellant's first assignment of error challenges the correctness of the action of the court in submitting to the jury the question of appellee's claim of adverse possession to any more of the land in controversy than 6 acres, which had been used and cultivated for a number of years by appellee and one J. D. Richardson before him; the proposition under this assignment being that the uncontroverted evidence shows that appellee had no claim of right to any of the land in controversy other than to the 5 or 6 acre field, so that appellee could not and did not

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

acquire title to that part of the land in controversy not within the field.

[1] Under this proposition we notice that appellant cites as authority for same the case of Stevens v. Pedregon (Sup.) 173 S. W. 210. This court has had occasion heretofore to pass upon this precise question, and in each instance we overruled the contention here made by appellant. Houston Oil Company v. Stepney, 187 S. W. 1082, and authorities there cited. See, also, Brown v. Fisher, 193 S. W. 357, decided by this court at the present term. We have seen no reason since our decision in the two cases above mentioned to change our views on this question, and appellant's first assignment of error is therefore overruled.

Appellant's second assignment of error, while in different form, raises substantially the same question as the first assignment, and is therefore overruled.

Before mentioning other assignments of error, we will make a brief statement of the facts (not the evidence) established on the trial below relative to appellee's claim of title under the statute of 10-year limitation. The undisputed facts show that one J. D. Richardson in 1895 entered upon the land in controversy on the Hooe, or Hove, survey, and cleared up a field of some 4 or 5 acres, which he fenced and regularly cultivated as a farm for a period of 5 years thereafter, or until the summer of 1901, on which last-named date he sold at least as much of the land in controversy as was included in the field of 4 or 5 acres to appellee, which sale was verbal, and appellee shortly thereafter took possession, and ever since that time appellee has remained in possession, using, cultivating, and enjoying said field, now including between 5 and 7 acres, and has raised a crop each and every year since his going into possession, for at least 12 years. The field that appellee has regularly cultivated during said period of time has been, until recently, inclosed by a substantial fence, and there was built and kept in the field a house or barn, known as a cotton house, for storing cotton and other products of the field, and during all the period of time that the field has been cultivated and used both by J. D. Richardson and appellee their possessions thereof were peaceable and continuous. At the time J. D. Richardson sold to appellee Richardson's claim on the land in controversy, in 1901, he (Richardson) also conveyed to appellee by deed a tract of land on the N. J. Smart survey, which, it appears from the record, adjoins the Hooe, or Hove, survey. The record does not disclose the number of acres conveyed to appellee on the Smart survey, but the undisputed facts disclose that appellee paid J. D. Richardson $400 as consideration in full for the tract on the Smart survey and Richardson's claim, whatever it was, on the land in controversy. J. D. Richardson never actually resided upon the land in controversy, nor has appellee ever actually resided thereon, but, as above stated, the field on the tract in controversy has been continuously farmed since 1895. The record does not disclose satisfactorily just what quantity of land or what claim J. D. Richardson set up to the land in controversy on the Hooe, or Hove, survey during the time he was in possession and cultivated the field above mentioned, but the record does disclose affirmatively and without contradiction that ever since appellee went into possession in 1901 he has at all times claimed 160 acres of land, including the field above mentioned, and that this claim was testified to by at least three witnesses besides appellee himself. Now, appellant takes the position in a number of its assignments of error that the evidence was insufficient to warrant a recovery by appellee of any portion of the Hooe, or Hove, survey in excess of the field of 5 or 6 acres, and we shall not discuss these different assignments numerically, but will say that we have carefully considered the testimony of every witness who testified in the case, and have concluded that the evidence was abundantly sufficient to warrant the verdict of the jury and judgment of the court awarding to appellee the 160 acres of land, as was done. It is intimated by appellant in its brief that the facts show that J. D. Richardson claimed only that portion of the land in controversy which was included in the field that was cultivated by him, but, after careful consideration of this question, we have decided that the record does not support appellant's contention on this point. It is true that the record leaves it uncertain as to what Richardson's claim was, but it does not show affirmatively that he claimed only that portion of land which was inclosed in the field. The testimony of appellee himself shows that he understood that Richardson was claiming 160 acres of land on the tract in controversy, and that he (appellee) at the time he purchased from Richardson believed that Richardson was claiming and was conveying to appellee his claim to 160 acres. It is true that appellee does say that he cannot be sure just what Richardson claimed on the land in controversy, but that he does know that Richardson at least claimed as much as was included in the field. But, leaving aside the question as to what portion of the land, if any, was claimed by Richardson, the evidence is absolutely uncontradicted and undisputed in any way that appellee has always claimed since 1901 160 acres of land on the tract in controversy, and that he has continuously and peaceably cultivated, used, and enjoyed the field of 5 or 6 acres, and has avowedly claimed 160 acres, including this field and improvements. The testimony on this point is all one way, appellant not having introduced a single witness to contradict this evidence introduced by appellee.

[2] It is true that appellant did show, on cross-examination of appellee, that he had not paid taxes on any portion of the land in controversy, all of which was admissible and proper, yet, as held by an unbroken line of decisions in this state, such evidence did not show conclusively that appellee was not claiming adversely the land in controversy, but was, the most that can be said for such testimony, a circumstance to go to the jury for what it was worth bearing upon the question as to whether appellee had claimed the land sued for. This case does not bring in question the doctrine frequently announced in what is known as encroachment cases, and, therefore the cases of Bracken v. Jones, 63 Tex. 184, Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559, Titel v. Garland, 99 Tex. 201, 87 S. W. 1152, and Holland v. Nance, 102 Tex. 177, 114 S. W. 346, have no application, and require no notice in the decision of this case. The field on the tract in controversy, which was regularly cultivated by Richardson and appellee since he acquired possession, is some half a mile from where appellee resides and has always resided, on the Smart tract, and there is no connection whatever between appellee's possession on the tract in controversy and his possession and improvements on the Smart tract. We say, therefore, that there could be no supposition of encroachment, by mistake or otherwise. The whole thing to be decided here is whether or not the appropriation, character of possession, use, etc., made by appellee of the land in controversy was of such character as will amount to "adverse possession," as that term is used in our statute.

[3] Every element of adverse possession is present in this case, unless it be that an actual occupancy in the way of a residence upon the land in question was required, and we hold that such an occupancy is not necessary to constitute adverse possession. The possession of appellee for at least 12 years of the field of some 5 or 6 acres was open and continuous, and he was using the land for the purposes to which it was adopted, and avowedly claiming all the time, as shown by the undisputed testimony herein, 160 acres of the tract.

[4, 5] No superior claim of title was recognized in any one, and if the testimony along these lines be true, as we must assume it is, it must be held that the true owner of this land was bound to take notice that the claim set up by appellee was hostile to and inconsistent with the claim of any right or title thereto by the true owner, and, without discussing this question further, we hold that, as presented in the record before us, the evidence was such that the court would have been warranted in instructing the jury to return a verdict for appellee for 160 acres of land, as claimed by him.

There is another assignment of error which challenges the action of the court in taking away from the jury, after having submitted to the jury, this issue:

"Was the possession, use, and cultivation, if any, by plaintiff, J. H. Holland, of the tract of land which he has under fence on the land in controversy, sufficient to put the defendant on notice that the plaintiff was, by such possession and cultivation of said tract under fence, claiming 160 acres of the land in controversy, under and by virtue of the 10-year statute of limitation, as same has been defined to you by the court?"

[6] It is true that the court first gave this issue in charge to the jury, but, for some reason not disclosed by the record, the jury was recalled, and this issue was taken away from the jury. Without determining whether this action of the court might or might not be prejudicial in certain supposable cases, we hold that in this case such action of the court was not prejudicial to appellant, for the reason, as stated above, that the trial court could have properly instructed a verdict straight out for appellee for 160 acres of the land claimed by him. This same question is also raised by an assignment which challenges the action of the court in refusing to give to the jury a special requested instruction by appellant submitting practically the same issue to the jury. What we have said with reference to the action of the court in taking this charge from the jury will apply to appellant's contention with reference to the court's action in refusing to specially instruct the jury on this point. We see no necessity for discussing any of the authorities cited by appellant, nor consuming further time in disposing of this matter. It is simply a case where appellee has acquired title under the 10-year statute of limitation to 160 acres of land owned by appellant, and the evidence showing this is in such shape that the trial court could have held and should have held that appellee's claim thereto was established as a matter of law.

All assignments are therefore overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

We have carefully considered appellant's motion for rehearing, and have concluded that it should be denied. We are also earnestly requested to certify to the Supreme Court, on the ground, as claimed, that our opinion affirming this case is in conflict with the holding of the Supreme Court in the case of Stevens v. Pedregon, 173 S. W. 210. We respectfully decline to grant the request for two reasons:

First, because we do not think the opinion of the Supreme Court in the Stevens-Pedregon Case, considered in its entirety, is susceptible of the construction contended for by appellant. Our understanding of that opinion is stated in our opinion in the case of Brown v. Fisher, 193 S. W. 362.

The other reason is that the very question which appellant wants certified is now pend-

ing before the Supreme Court, and will be reached and decided, in all probability, before action of that court could be had on the question, if here certified.