## HOUSTON OIL CO. OF TEXAS v. PULLEN et al. (No. 1004.)*

(Court of Civil Appeals of Texas. Beaumont. Nov. 15, 1923. Rehearing Denied Nov. 28, 1923.)

1. **Adverse possession** ⟨key⟩115(1)—**Acts of possession held to raise issues of limitation.**

Defendant's exercise of acts of possession incident to ownership *held* to raise issues of limitation.

2. **Adverse possession** ⟨key⟩109 — **Acknowledgment of tenancy after end of period no defense.**

An acknowledgment of tenancy after the end of the limitation period does not divest the claimant of his limitation title.

3. **Adverse possession** ⟨key⟩60(3)—**Acknowledgment of tenancy during period destroys adverse character.**

An acknowledgment of tenancy, if made during the limitation period, will destroy the adverse character of the claimant's holding.

4. **Adverse possession** ⟨key⟩60(3)—**Acknowledgment of title in another may be inferred from conduct.**

A formal contract of tenancy is not necessary to destroy the adverse character of a claimant's holding, since an acknowledgment of title in another with an agreement that the possession is not hostile to that title has the same effect, nor is an acknowledgment in direct terms necessary, since it may be inferred as a matter of law from the conduct of the parties.

5. **Adverse possession** ⟨key⟩60(3)—**Acknowledgment must involve admission that holding is under record title.**

An acknowledgment of no title, to destroy the adverse character of the holding, must involve an admission that the holding is under the record title or not adverse thereto.

6. **Adverse possession** ⟨key⟩60(3) — **Limitation claimant may contract to buy adverse title.**

A limitation claimant may contract with the record owner to buy his title or may negotiate with him for that purpose, without destroying the adverse character of his holding.

7. **Adverse possession** ⟨key⟩60(3) — **Subsequent agreement as to character of prior adverse holding ineffective.**

Where the period during which an adverse holder agreed to pay rent was one of adverse holding during its continuance, no subsequent agreement by the adverse holder could have changed the actual character of the holding for that period any more than an agreement after the expiration of the limitation period could divest title.

8. **Adverse possession** ⟨key⟩60(3)—**Letter of adverse holder to record owner held mere evidence of abandonment.**

A letter by an adverse holder to the record owner, written a few days before the 10-year limitation period would expire, proposing that if he and the record owner could agree on the price of the land the adverse holder would pay rent for that year, *held* merely an evidentiary fact to be considered by the jury, and did not as a matter of law destroy the adverse character of possession.

Appeal from District Court, Polk County; J. L. Manry, Judge.

Action by the Houston Oil Company of Texas against Thomas J. Pullen and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Kennerly, Lee & Hill, of Houston, for appellant.

Vinson, Elkins, Wood & Pollard, of Houston, and James E. Hill, of Livingston, for appellees.

WALKER, J. On the verdict of a jury submitting the issues of 10 years' limitation, the appellees in this appeal recovered from appellant about 60 acres of the Gavino Aranjo survey in Polk county, Tex. It is conceded that appellant owned the record title. Appellees held under the possession of one R. V. Martin and their title rests entirely on the character of claim asserted by R. V. Martin. His possession is admitted.

[1] Appellant challenges the verdict of the jury as being without support on the proposition that Martin's possession was only an encroachment under the rule announced in Bracken v. Jones, 63 Tex. 184. There are many facts in this case that take it out of the rule relied on by appellant. While Martin had under fence, in cultivation, only about 8 acres of the land in controversy, which was a part of his field of about 40 acres, lying on other land owned by him, and while he did not enlarge his inclosure after a line was run between his land and the land in controversy, yet at the time the line was run he informed the record owner that he was claiming the land in controversy. He paid taxes on it for more than 20 years, cut rails, boards, and cross-ties from it, offered to sell it, ran lines, and hacked trees around it, deadened timber on it for the purpose of cultivation, and exercised all the acts of possession incident to ownership. In our judgment these facts raised the issues of limitation.

The court charged the jury not to consider any occupancy prior to January 1, 1889, nor any subsequent to February 18, 1901. Neither side excepted to this charge. On the last-mentioned date, Martin executed to the record owner a tenancy contract. Under this contract appellant advances the proposition that—

"Where the homestead rights are in danger of being lost, the husband may, in good faith, act alone in preserving such rights as far as possible."

And again:

"The agreement dated February 18, 1901, between R. V. Martin and John H. Kirby, is now valid and binding, even though the same was the homestead property of the Martins, because the Martins subsequently abandoned it as such and acquired a new homestead."

[2] There is no merit in these propositions. If Martin's possession raised an issue under the 10 years' statute of limitation, then the verdict of the jury resolved that issue in favor of appellee. An acknowledgment of tenancy, after the end of the limitation period, does not divest the claimant of his limitation title. Brown v. Fisher (Tex. Civ. App.) 193 S. W. 361. If title had matured in Martin on the 18th of February, 1901, the homestead rights were not in danger, and there was no issue to be adjusted between Martin and Mr. Kirby. There is no suggestion that the tenancy contract was sufficient to convey the title to the homestead, which was the character of Martin's title from the date of the execution of the tenancy contract.

[3-5] On the 23d of December, 1898, Martin wrote the following letter to J. H. Kirby, having reference to the land in controversy:

"Chester, Texas. Dec. 23, 1898.

"J. H. Kirby, Houston.

"Will you be in Woodville at the next term of the D. C. court. I would be glad to see you and try to come to some definite understanding about the land I have been cultivating of yours. If you will not be at Woodville are you willing for W. H. Whitehead to look at the land and say what it is worth with or without the timber. In the meantime I shall pay rent for this year. Hoping to hear from you at once, I am,

"Yours respectfully,     R. V. Martin."

Appellants insist that this letter was such an acknowledgment of title in J. H. Kirby, the record owner, as to take from Martin's possession its adverse character, if such had been its character prior to the writing of this letter. We recognize that an acknowledgment of tenancy, if made during the limitation period, will destroy the adverse character of the claimant's holding. Nerio v. Christen, 189 S. W. 1038. We also recognize that a formal contract of tenancy is not necessary to destroy the adverse character of a claimant's holding, for an acknowledgment of title in another with an agreement that the possession is not hostile to that title has the same effect; and that such an acknowledgment in direct terms is not necessary, but may be inferred as a matter of law from the conduct of the parties. Railway Co. v. Speights, 94 Tex. 350, 60 S. W. 659. We believe that the correct rule is thus stated in McDonald v. McCrabb, 47 Tex. Civ. App. 259, 105 S. W. 242.

" 'A single lisp of acknowledgment by defendant that he claims no title fastens a character upon his possession which makes it unavailable for ages.' Warren v. Frederichs, 83 Tex. 384, 18 S. W. 750; Railway Co. v. Wilson, 83 Tex. 157, 18 S. W. 325; Hand v. Swann, 1 Tex. Civ. App. 241, 21 S. W. 283." Robinson v. Bazoon, 79 Tex. 526, 15 S. W. 585.

[6, 7] But every acknowledgment of title in the record owner by a limitation claimant does not destroy the adverse character of his holding. Such acknowledgment must involve an admission that the holding is under the record title or not adverse thereto. A limitation claimant may contract with the record owner to buy his title, or may negotiate with him for that purpose without destroying the adverse character of his holding. Chapman v. Dickerson (Tex. Civ. App.) 223 S. W. 318.

The letter from Martin to Kirby does not carry within its four corners its own con-

struction. It is apparent from a reading of the letter that Martin was seeking an adjustment of some issue with Mr. Kirby. When we go to the record, we find that he had been in possession, claiming adversely to Mr. Kirby for about 8½ years, cultivating, using, and enjoying the land as if he owned the title thereto. True it is that by this letter he admitted that the title was in Kirby, but, together with this admission, the facts show that he was claiming adversely to Kirby and was in actual possession of the land to which this letter referred. By the terms of the letter he proposed, "In the meantime I shall pay rent for this year." The period covered by this proposition had expired. The period referred to, that is, for the year 1898, was one of adverse holding during its continuance. No subsequent agreement by Martin could have changed the actual character of the holding for that year, any more than an agreement, after the expiration of the limitation period, could divest title. Martin could have agreed not to hold adversely in the future. Such an agreement would have destroyed the character of his possession and defeated his limitation claim, because 10 years had not elapsed. He could have agreed that his present holding was not adverse— "a single lisp of acknowledgment"—but such is not the necessary construction of Martin's proposal.

[8] The facts of the case do not show, as a matter of law, that Martin, under this proposal, became a tenant of Kirby. The jury expressly found that he did not even acknowledge that he was such a tenant. All that we can see in this letter, under the jury's verdict, is an offer on the part of Martin to buy Kirby's title, inquiring as to how the purchase may be made, and suggesting one of the conditions that he was willing to meet; that is, if he and Kirby could agree on certain terms, he was willing, in addition to paying the purchase price, to pay rental for the year 1898. Together, it constituted one proposal, to be accepted or rejected as such; that is to say, the letter is subject to the construction that if he and Kirby could agree on the price of the land that he would pay rent, and the agreement to pay rent was conditional on the agreement to buy, or at the most, it was only a naked promise to pay rent at the expiration of a period of adverse holding. Whatever question of liability might arise under such a promise, it could not affect the actual purpose of Martin's possession for that period. Suppose the 10-year period had been complete immediately before the letter was written. Could it have affected the actual character of the possession? To ask the question is to answer it. If we are correct in our construction of Martin's letter, it was only an evidentiary fact to be considered by the jury, and did not, as a matter of law, destroy the adverse character of his possession.

Finding no error, under appellant's propositions and assignments, the judgment of the trial court is in all things affirmed.

HIGHTOWER, C. J., disqualified to sit.