LOUISIANA & TEXAS LUMBER CO. v. STEWART et al.

(Court of Civil Appeals of Texas. Galveston. May 23, 1912.)

1. ADVERSE POSSESSION (§ 114*) — ACQUISITION OF TITLE—EVIDENCE—SUFFICIENCY.

Evidence *held* to support a finding that a person's possession of land was adverse and continuous and undisputed for more than 10 years, ripening into title by limitation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

2. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERRONEOUS JUDGMENT.

Plaintiff in trespass to try title may not complain of the judgment because it awards defendant less land than he is entitled to under the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033.*]

3. ADVERSE POSSESSION (§ 109*)—TITLE BY LIMITATIONS—DIVESTING OF TITLE.

One who had acquired title by limitations did not, by renting the premises from another and stating that he did not claim them, divest himself of the title acquired.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 629–635; Dec. Dig. § 109.*]

4. TRIAL (§ 143*)—INSTRUCTIONS—CONFLICTING EVIDENCE.

A requested instruction, directing a finding on an issue, is properly refused, where the evidence on the issue is conflicting.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

5. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction, directing the jury to consider certain evidence in arriving at a verdict, is properly refused as a charge on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

Appeal from District Court, Houston County; B. H. Gardner, Judge.

Action by the Louisiana & Texas Lumber Company against James Stewart and another. From a judgment granting insufficient relief, plaintiff appeals. Affirmed.

See, also, 130 S. W. 199.

Nunn & Nunn, of Crockett, for appellant. Madden & Ellis, of Crockett, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by the appellant against James Stewart and wife, Mattie Stewart, to recover the title and possession of a survey of 640 acres of land in Houston county patented to the International & Great Northern Railroad Company and designated as International & Great Northern survey No. 40, patent No. 138, vol. 41. The defendants answered by general demurrer and plea of not guilty, and by special plea asserted title by limitation to 160 acres of said survey, and asked that commissioners of partition be appointed to set apart to them 160 acres of the survey, including their improvements. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for all of the land except 80 acres, including defendants' improvements, which the verdict and judgment awarded defendants. Commissioners were appointed to partition the land and make report at the next term of the court.

This is the second appeal of the case. The opinion of this court on the former appeal can be found in 130 S. W. 199.

[1] This suit was instituted in February, 1909. The evidence shows that appellees settled upon the survey in controversy in 1895 and have lived thereon continuously since that time. Appellee James Stewart testified that he went on the land to establish a home thereon and with the intention of acquiring title thereto by limitation. He has cultivated a portion of the land every year since he went on it. At the time he took possession, there was only one house on the land and a small "patch" inclosed. Three or four years after he moved there, he built another house, in which he has since lived, and which was larger than the first one. The first was a log house with only one room. The second house was a double log house with shed rooms and a gallery. He has increased the land in cultivation each year, and now has a field of about 26 acres.

Other witnesses testified that appellees had occupied and cultivated the land continuously since 1895.

A. MacTavish, a witness for appellant, testified that in June, 1900, he was employed by the then owner of the land to find if there were squatters thereon, and that he saw appellee James Stewart, and had a conversation with him in regard to his claim to the land, and was told by him that he did not claim the land. He then told Stewart that he must sign an instrument disclaiming title to the land and make application to purchase it from the owners, and that Stewart agreed to do this, and did sign the following instrument, which was prepared by the witness: "Tadmor, P. O., June 7, 1900. New York & Texas Land Co., Ltd., Austin, Texas—Dear Sir: I hereby make ap-

plication to purchase from you fifty (50) acres of land out of survey number forty (40) I. & G. N. R. R. Co., Houston Co., Texas, for which I will pay $2.50 per acre on reasonable time, said 50 acres to include improvements which I am now living on and occupying as per survey made by M. Homeyer, your surveyor. [Signed] J. H. Stewart."

Stewart denied making such statement, and swore that he did not sign the instrument above mentioned and never saw it until it was shown him on the witness stand. He stated that he did propose to buy 50 acres of land from MacTavish, but it was no part of the land he then had in cultivation, but was on a different survey.

George Harrison, for appellant, testified that he had a conversation with Stewart in regard to his claim to the land, and Stewart told him that "he went down to the mill to buy it, and that they told him that it was not on the market yet, but when it was on the market they would give him first choice on it; and that he never heard of appellees' claim to this land by limitation until after this suit was filed."

J. E. Harrison, for appellant, testified that he had a conversation with Stewart about his claim to the land a short time before the first trial in the court below; that Stewart came to witness' house and told him that he wanted him as a witness to prove how long he had been on the land, and witness told him that he did not have time to go to the trial, and he could get some others, and he did not know how long exactly he had been living on that land, and told him that the first place he was living on was the Leonard Lamb place, and said to him that he thought it was his pa's place, and he said, "Yes, sir," and said he did not know any difference until the company came and surveyed it out, and Mr. McGregor came to him and told him that it was their land, and they wanted the timber on it, but that he could live on it, and when the timber was gone they would sell him the land. He did not tell witness how much land Mr. McGregor agreed to sell him.

Stewart admitted that he paid rent for the place to McGregor in 1908, but says he was claiming the land by limitation, and paid the rent because it was exacted of him and he did not know any better.

We think this evidence is sufficient to sustain the finding that appellees' possession of the land was adverse, and, as the undisputed evidence shows a continuous occupancy, use, and cultivation of a portion of the survey for more than 10 years before this suit was brought, the first assignment, which complains of the verdict on the ground that it is without any evidence to support it, cannot be sustained.

[2] The second, third, and seventh assignments of error complain of the verdict on the ground that there was no evidence in the case upon which the jury could base a verdict in favor of defendants for one-half of the land claimed by them, and that defendants were entitled to recover all or none of the land, and the verdict for one-half is without any evidence to support it. As before said, we think the evidence was sufficient to sustain a verdict in favor of defendants, and appellant cannot complain if the jury have given them a less quantity of land than the amount claimed by them. We think these assignments are without merit.

[3] There was no error in the charge complained of by the fourth assignment of error. If defendants had acquired title by limitation before they rented the land from McGregor and made statements to the effect that they were not claiming it, such acknowledgment of tenancy and verbal admission would not divest them of a title by limitation previously acquired, and the trial court properly so instructed the jury.

[4] The defendant James Stewart testified that the 50 acres of land he offered or proposed to buy from MacTavish was not a part of the land in controversy. In view of this testimony, the court ought not to have given the charge requested by appellant in which the jury were told that, if Stewart signed the application to purchase before set out, they should return a verdict for the plaintiff. If Stewart in fact signed this application, unless the 50 acres of land described therein was a part of the land involved in this suit, and Stewart knew this when he signed it, his signing the application to purchase would have no bearing upon the question of his adverse possession of the land in controversy. The evidence being conflicting on the issue of what land the application referred to, the requested instruction was properly refused.

[5] The sixth assignment of error complains of the refusal of the court to instruct the jury that the verbal statements of the defendant Stewart, made after his 10 years' occupancy of the land had been completed, "should be considered as explanatory of the character of his possession." It is never proper for the court to point out in the charge portions of the evidence and instruct the jury that they should consider such evidence in arriving at their verdict. Such a charge gives undue prominence to the evidence thus pointed out, and for that reason is held to be a charge upon the weight of the evidence.

This disposes of all of the assignments presented by appellant's brief.

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

Affirmed.