**C. R. GOSLIN et al., Appellants,**

**v.**

**Julia BEAZLEY et al., Appellees.**

**No. 13345.**

Court of Civil Appeals of Texas.

Houston.

Sept. 15, 1960.

Motion for Rehearing Overruled in Part and Granted in Part, Oct. 20, 1960.

Second Motion for Rehearing Overruled Nov. 10, 1960.

690

C. R. Goslin, Houston, and P. Harvey, Houston, of counsel, for appellants C. R. Goslin, Fred Morris, A. A. LaBauve, A. W. Bordman, Ben Falk and Lee Falk.

John M. Robinson, Houston, for appellant Henry White.

Erwin, Wagner & Hodson, Willard B. Wagner, Houston, for Mrs. Winnie L. Morris, a widow, and Elmer F. Morris.

Joel W. Cook, Houston, for appellee H. A. Phillips, Trustee.

Rolland Bradley and Nowlin Randolph, Houston, for appellees other than H. A. Phillips, Trustee.

WERLEIN, Justice.

On July 7, 1960, this Court handed down its opinion in this cause, Chief Justice Bell not participating although he sat at submission of the case. Recently, while considering motions for rehearing filed herein, it was for the first time discovered that Justice Woodruff is disqualified on this appeal because of his relationship within the third degree to one of the parties of the suit. Chief Justice Bell is not disqualified and is now participating herein, but since he did not participate in the case previously and because of Justice Woodruff's disqualification, it is ordered by the Court that said opinion of July 7, 1960 be and the same is hereby withdrawn, and the following is substituted as the opinion of the Court:

Appellees brought this suit in trespass-to-try title and for damages against appellants and numerous other defendants. The suit involves approximately 61.28 acres of land on the San Jacinto River near its confluence with the Houston Ship Channel in Harris County. On March 24, 1958 final judgment for the land was rendered in favor of appellees against all defendants not previously dismissed, such judgment being upon disclaimer by two defendants, by default against eight, and upon motion for summary judgment against all the rest of the defendants, including the appellants. The court also rendered judgment against appellants for $50 damages. The defendant, Henry White, cited by publication and who filed an answer and cross-action by his attorney ad litem, has not perfected an appeal from the judgment, and the only appellants are C. R. Goslin, Fred Morris, A. W. Bordman, A. A. LaBauve, Ben Falk and Lee Falk.

Appellant Fred Morris died May 15, 1959, and his sole heirs at law, to wit, his widow, Mrs. Winnie L. Morris, and his son, Elmer F. Morris, have filed a motion in this Court to affirm the trial court's judgment. Appellants Ben Falk and Lee Falk, disclaimed as to all the land except Lot 9 of the Blum Subdivision, and pled not guilty as to such tract. Appellants, Fred Morris and C. R. Goslin, pled not guilty. Appellant, A. W. Bordman, disclaimed as to all of the land except the south ½ of the south ½ of Lot 8 of said Subdivision, and an 8 acre tract out of Lot 9 of said Subdivision which he alleged he conveyed to his co-defendant, C. R. Goslin. Appellant, A. A. LaBauve, disclaimed as to all the land except the north ½ of the south ½ of Lot 8 in said Subdivision, to which excepted tract he pled not guilty.

By their first three Points appellants contend that the court erred in granting the summary judgment because the evidence raises material fact issues as to the credibility of the witnesses and as to whether appellees have title by limitation.

A short résumé of the testimony with respect to appellees' limitation title is necessary in order to pass upon said Points. The evidence consists of depositions covering more than 700 pages of testimony and numerous exhibits and affidavits, in addition to the pleadings.

The evidence shows that on April 30, 1913 one John Farmer conveyed to John Beazley, Sr. "those certain tracts and parcels of land lying and being situated in Harris County and State of Texas, and being more particularly described as follows to wit: Being a part of the N. Lynch, H. R. Survey. 1st. (22½) twenty two and one half acre tract in lot No. 8, of the Blum Subdivision being the same property as described in deed from E. H. Bettis et al. to John Farmer recorded in Vol. 261 page 337. 2nd. The Hudson ten (10) acre tract out of lot No. 9 of the Blum subdivision being the same property as described in deed from P. W. Hudson to John Farmer recorded in Harris County deed records Vol. 261 page 338. 3rd. The Farmer (15) fifteen acre tract, being out of lot No. (9) Nine of the Blum subdivision and being the same property as described in deed from E. H. Bettis et al. to John Farmer recorded in Harris County deed records Vol. 248 page 270" of said deed records.

Appellees, who are the Beazley heirs, have claimed the land involved in this suit as being that so conveyed to Beazley and have called it "The Farmer land." They claim that they have had possession, use and enjoyment of the land from 1913 to the latter part of 1956 through tenants, the first being Dick Tompkins, who leased the land from 1913 to 1928, and the second tenant being the appellant Morris, who leased the land from about January, 1929 to the latter part of 1956, at which time he ousted appellees from possession. Taxes were paid on the land by the Beazleys from 1914 to 1956, inclusive, with no delinquencies except the taxes for the year 1943 which were paid when several months past due.

W. C. Lord stated in his affidavit that he had been familiar with the land involved in this suit since 1900. He and Dick Tompkins were close friends, and he knew that Tompkins had the land leased from 1900 to 1928 and regularly ran cattle thereon and kept the fences in good repair. He further testified that he passed along the south line of the property frequently for the first 30 years as the old road to the Lynchburg ferry was along that line, and that the old south fence was still standing until two or three years ago and was in the same location it had been since 1900.

D. R. Thayer, who was raised in the Lynchburg area, stated that he hunted on the land as a boy of eleven in 1923 and he continued to hunt thereon until 1939. He knew that Tompkins and Morris, at different times, had the property leased during all the time that he was familiar with it and that they ran cattle on it from 1923 to 1939. He identified the land as being the 61.28 acres of land shown on the surveyor's plat made in 1956. During all of the 16 years that he hunted on the land there were good substantial fences on the north, the east and the south sides of the property, and all kept in good enough repair to turn cattle. He found many of the old posts of such fences still standing a few days before he made his affidavit on November 27, 1957. There was never any fence on the west side of the property as the San Jacinto River served as a barrier to cattle there just as it does for all the land in that area.

W. E. Reid, who lived continuously in the Lynchburg area from 1916 to 1949 and was familiar with the property in question, stated in his affidavit that he first became acquainted with the property when it was operated by his cousin, Dick Tompkins, who grazed cattle on it. Tompkins continued to lease it for many years and until appellant Morris became the tenant. Reid testified that he never heard of either Tompkins or Morris claiming to own any part of the land. During all the time that Reid knew the land it had a good fence, sufficient to turn cattle, on the north, east and south sides, and on the west side the San Jacinto River was used as an obstacle to turn cattle.

Robert M. Atkinson, a registered professional engineer and registered public surveyor, stated that he made a survey on the ground in the fall of 1956, and that he

found an iron pipe which was the common corner of Lots 9, 8, 6 and 5 of the Blum Subdivision as set by an earlier surveyor and was able to find numerous other original markings, including an old fence on the east line of the property which had obviously been used for a great many years as he found many trees where the old wires apparently went directly through the trees or the trees encircled them, and he found a similar fence on the north line with many wires imbedded in trees. Atkinson's survey shows that the south one-half of Lot 8 included within the Beazley tract contains 20.53 acres instead of 22½ acres, as described in the Bettis deed to Farmer, and that Lot 9 contains 40.75 acres. His field notes are those used in the petition of appellees.

Hamilton Beazley, one of the appellees, stated in his affidavit that he had always understood and claimed that the deed to his father from Farmer conveyed all of the land involved in the present suit, that is, all of Lot 9, and the south 20.53 acres of Lot 8 in the Blum Subdivision, and that such land was always known to him as "the Farmer land"; that he and the other appellees were the sole owners of the land as devisees under the will of John Beazley, Sr. and claimed the land by record and limitation title as being the land sold by John Farmer and conveyed by said deed; that all three of the fences on the south line, the east line and the north line were good 4-wire fences capable of turning cattle in 1944 when he went hunting on the property and went all over it; that in 1956 and 1957, shortly before some of the appellants tore down the old fences, he went over the property twice and found much of the old fences still standing, all of them along the same lines where they had been before.

Julia Beazley, daughter of John Beazley, Sr., who died October 8, 1914, stated in her affidavit that she and her sister, Mrs. Gaillard, took over the management of her father's estate as executrices under his will; that after her father's death in 1914 and

until the end of 1928 the property involved in the suit was leased to a man named Dick Tompkins, who paid regular rent although occasionally a little late. He leased the land for grazing and ran cattle on it and at no time asserted any claim of ownership or any claim except as tenant of the Beazleys; that from the time her father purchased the land in 1913 no adverse claim of any kind or character had ever been made until a few months before the present suit was filed, when Fred Morris, Goslin, Bordman, Falk and LaBauve began to make various claims of ownership; that many times in the course of the years she had driven by the land or been there to look at it, and that since the last of 1928 or the early part of 1929 the defendant Fred Morris had leased the land, and that he never made any claim to any part of it until a few months before the suit was filed.

Julia Beazley also identified the final grazing lease agreement between her and her sister as executrices of the Beazley estate and R. V. (Dick) Tompkins covering the property. The last grazing lease to Tompkins was from January 1, 1923 to December 31, 1928, a period of five years, and provided for an annual rental of $20 in advance.

Roy D. Thayer stated in his deposition that he was all over the land between 1901 and 1914; that he moved to Scott's Bay in 1915 and back to Lynchburg in 1916; that after the hurricane in 1915 the fences were patched up, had 4 strands of wire and would turn cattle; that he didn't know much about the land after 1916; that the only thing he knew was "that was the Beazleys' that was under that fence."

Mrs. Mary Gaillard, one of the appellees, 84 years of age, testified by deposition that Tompkins was leasing the property at the time of her father's death; that she and her sister continued leasing the property to Tompkins, and that on January 1, 1929 she gave written notice to Tompkins that his lease expired on December 31, 1928 and to move his cattle as the land was being

leased to another man who wished to take immediate possession. She also testified that the land was referred to in the family as "the Farmer land" because it was bought from a man named Farmer, and that they considered that land to be all of the land bought from John Farmer and that during the years 1914 to the middle of 1956 she never heard of any adverse claims being made to the land; that she was claiming the land not only for herself but for the rest of the family, her brothers and sisters, and they all owned it together.

Mrs. Gaillard was then shown a receipt in which she acknowledged receipt from F. J. Morris of $25, payment in full for pasture rent from July 15, 1928 to July 15, 1929. She testified that they took the property away from Tompkins because he was slow in making payments; that Morris continued to lease the land from 1928 or 1929 until two years ago when he quit paying rent; and that she had walked over the land with Morris in 1943 and he showed her the boundaries of the tract.

Appellant Morris, in his deposition, was not able to fix the exact date when he first leased the property, but admitted that he went into possession as a tenant of the Beazleys sometime prior to 1928 and he kept occupying the property involved in the suit, which he identified on the plat, the four corners being marked A, B, C and D, until January 1, 1937 when he signed a written lease of the property for three years, renting it from the Beazleys; that in 1946 he signed a one year lease on the property and on September 1, 1949 he signed a three year lease to such property which expired August 31, 1952; that he kept right on paying rent until about a year and a half prior to the date his deposition was taken on August 12, 1957; that he paid Mrs. Gaillard rent every year, and was not leasing the Beazley land from anyone else or paying rent to anyone else on it; that he never did tell any of the Beazleys he was claiming any part of the land and never told any of them that he did not want to be bound by the leases and was not going to

be a tenant or was going to claim part of the land for himself. He stated that at the present time he was not claiming any specific part of the land involved in the suit and had never claimed any certain part of it.

He further testified that he claimed everything that the Beazley title was not good to; that on December 29, 1956 he and the defendant Goslin executed a deed conveying all of Lot 9 to the defendants, Lee Falk and Ben Falk, for which he got $25; that he claimed a half interest in Lot 9 because he had it under a fence all the time; that he wants what the Beazleys can't get good title to, and is claiming what the Beazleys don't claim; that if the Beazleys have title to all of the property in the suit, that is theirs because he didn't want anything that way. On the day the deposition was taken, Morris was not able to say which land that is involved in this suit he has an interest in. He said he told some people he was claiming an interest but didn't tell them what land he was claiming because he didn't know exactly where it was, and that he was just going to claim the land that was not claimed by anybody else; that all he knew was that it was under the same fence where he pastures his cattle, but he couldn't say whether it was ten acres or one acre or any specific area.

The testimony of Morris shows that the only claim he asserts is to a limitation title and that the only possession he has had of the land involved in this suit was that under leases from the Beazley heirs; and that the acreage in the pasture that Morris has had under fences including the Beazley land was approximately 150 acres.

■ The law is well settled that a summary judgment should be granted only when there is no disputed fact issue in the case. All doubts as to the existence of fact issues should be resolved against the movant. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93; Murchison v. Post Independent School District, Tex.Civ.App., 258

S.W.2d 229, ref., n. r. e. The court is required to accept as true all evidence of the party opposing the motion for summary judgment and give such party the benefit of every reasonable inference which properly can be drawn in his favor. Reese v. Davitte, Tex.Civ.App., 255 S.W.2d 1015, error dism.

■ In applying the law as laid down in the foregoing cases, we have concluded that appellants have wholly failed to raise any fact issue with respect to appellees' adverse possession and limitation title to the tract of land in question. The uncontroverted affidavits and undisputed testimony of appellees' witnesses in their depositions, together with the admissions and testimony of Morris in his deposition, clearly show that appellees have as a matter of law acquired a good limitation title to all of the property sued for.

■ Appellants contend, however, that there are conflicts in the evidence with respect to appellees' limitation claim since the maps introduced in evidence are conflicting as to the quantity of land in the south ½ of Lot 8 and in Lot 9. The map of 1871 recorded in Vol. 9–A, page 492, Harris County Deed Records, shows that the south ½ of Lot 8 contains 17 acres, and that Lot 9 contains 30½ acres. The map attached to the deposition of appellant, Fred Morris, made by surveyor Atkinson in November, 1956 describes the south ½ of Lot 8 as 20.53 acres and Lot 9 as 40.75 acres; whereas, the map attached to the deposition of appellees' witness, Frank West, shows that the tract of land consisting of ½ of Lot 8 and Lot 9 contains a total of 55.68 acres.

We do not think the differences in acreage shown on said maps, made at different times and by different surveyors, raise any material fact issue insofar as appellees' limitation title is concerned. The testimony is clear and definite that their claim extends to and includes the south ½ of Lot 8 and Lot 9 regardless of the exact acreage contained therein. They identified the tract as the land which they claimed under the

Farmer deed by both record and limitation title, having the boundary lines which Morris had pointed out to Mrs. Gaillard, and with the four corners of the track marked A, B, C and D on the map introduced in evidence and attached to the Morris deposition, such tract containing in all, according to the survey of Atkinson, 61.28 acres.

The other conflict asserted by appellants allegedly appears in the testimony of Mrs. Gaillard. On cross-examination she testified:

"Q. But you are not claiming any land that you might have had by limitation; you are just claiming the land that you bought from the Farmers—I mean that your father purchased from John Farmer? A. I am not claiming anybody's land by limitation. We are claiming just what we bought."

Appellants rely on Warren v. Fredericks, 1892, 83 Tex. 380, 18 S.W. 750, and on Nerio v. Christen, Tex.Civ.App., 189 S.W. 1038, 1040, in which latter case it is stated, with respect to testimony showing that one held land in subordination to the real title " * * * and when the admission is made by the possessor upon the witness stand in the very case in which he assumes the burden of showing adverse possession, it should be received as much more conclusive than when made under other circumstances."

Appellants also rely upon Kirby Lumber Company v. Conn, 114 Tex. 104, 263 S.W. 902, 903, in which it is stated:

"Yet, without intent to claim land as his own, no matter how groundless the claim, the possessor can never acquire a limitation title thereto."

They also cite Houston Oil Company of Texas v. Jones, 109 Tex. 89, 198 S.W. 290; Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 145 S.W.2d 569.

The foregoing cases cited by appellants hold in effect that recognition by the limitation claimant of the true owner's title, made at any time prior to the maturing of

the limitation title, is fatal to the limitation claim; but if made after the maturing of the limitation title, such recognition, if it constitutes a definite admission of no adverse claim, may raise a fact issue as to whether such claimant in fact during the limitation period relied upon, intended to claim adversely to the true owner.

In her testimony Mrs. Gaillard did not recognize title to the land in anyone else, nor did she at any time admit that the Beazley heirs were not claiming the limitation title pleaded by them. If any inference might have been drawn from the foregoing statement that she was not claiming the land in question by limitation title, it was immediately dispelled by Mrs. Gaillard's testimony in the same deposition and at the same sitting when she testified that she did not make or intend to make any such statement. Previous to such cross-examination she had testified, in referring to the plat, that she made claim to the land shown thereon as Lot 9 and the south 20.53 acres of Lot 8, and that she always understood that "we owned it. We didn't claim it. We owned it." She was asked whether she claimed to own just part of it or all of it, and she answered, "All of it."

■ On redirect-examination, she testified that it was never her intention to waive any right or give up any right which she may have to any of the land within the four corners marked A, B, C and D of Plaintiffs' Exhibit No. 1, and that she was claiming all of the land by any character of title that she had. We think the testimony of this elderly woman is clear to the effect that she was claiming the land in question as the land which her father bought from Farmer, and she was claiming all of the land enclosed in the fences across the years as being such land, and she never meant to say anything to the contrary. The fact that she may have been mistaken in believing that the entire tract was included in the Farmer deed, would not deprive her possession of its hostile character. See 2 Tex.Jur.2d, p. 190, § 91, and authorities cited.

There is no analogy between the facts in the present case and the facts in such cases as Nerio v. Christen, supra, upon which appellants heavily rely. In that case when demand was made upon the limitation claimant he surrendered possession of the property, removed his fence and delivered part of his crop. When interrogated by the court, he stated that he went upon the land thinking that if anyone should claim it he would pay rent for it, and he repeated the statement that the year of the trial was when he first claimed to own the land. We shall not undertake to analyze the other cases cited. Suffice it to say they are quite distinguishable from the instant case, in which appellees claimed the land within the fences as the Farmer land, used it, enjoyed it, and received rents from leasing it for a period of more than forty years.

In Bruce v. Washington, 80 Tex. 368, 15 S.W. 1104, 1105, the defendant stated on cross-examination that he "never intended to claim any land but what he bought, and never intended to get any of plaintiff's (Mr. Bruce's) land by limitation." Although such statement, unlike that of Mrs. Gaillard, was a definite statement that the defendant never intended to claim any of the plaintiff's land by limitation, the court said the defendant's possession was an actual and visible appropriation of the land, commenced and continued under a claim of right wholly inconsistent with Bruce's and hostile to any claim he had. The court also stated:

"The legal effect of the existence of these facts cannot be destroyed or impaired by the mere declaration of the defendants, after the right attaches by virtue of the law, that they were not claiming plaintiff's land by limitation. The statute has given to the adverse, continuous, hostile possession, shown by the proof in this case, a certain effect. It results in the consummation of a title.—a title as full and absolute as any other perfect title. Such title is the owner then deemed to hold preclusive of all claims; and it is not to

be affected by a subsequent statement to the effect above mentioned."

See also Louisiana & Texas Lumber Co. v. Stewart, Tex.Civ.App., 148 S.W. 1193, to the same effect.

■ In view of all of Mrs. Gaillard's testimony and her very clear and succinct statements as to what she was claiming for herself and her brothers and sisters, we do not think that the single statement made by her, referred to by appellants, which she almost immediately said that she did not make or at least did not mean to make, could give rise to any genuine fact issue. The whole tenor of her testimony definitely shows that she was always claiming all of the land in this suit by both record and limitation title.

Appellants, by their next group of points, assert in substance that there are defects in appellees' record title, and that the deeds introduced in evidence by appellees do not sufficiently describe the property sued for.

■ We do not think it necessary to discuss the alleged irregularities in appellees' record title insofar as the claims of Goslin, Morris and the Falks are concerned. Appellant Morris testified in his deposition that his only claim to any title was by limitation, and certainly being the tenant of the Beazleys he could not claim adverse possession as against their possession nor contest their title without connecting up with some outstanding title, which he never did. Appellants Goslin and the Falks are in no better position than Morris to contest appellees' title since they hold under him and took possession of the property by his permission. Houk v. Kirby Petroleum Co., Tex.Com.App.1930, 65 S.W.2d 496; Benskin v. Barksdale, Tex.Com.App.1923, 246 S.W. 360.

In Tyler v. Davis, 61 Tex. 674, our Supreme Court stated in a trespass-to-try title suit:

"In this suit the landlord seeks to recover from his tenant, who is holding over after the expiration of the lease, and refuses to surrender possession. To sustain his action he has introduced no other proof except the lease and the value of the use and occupation. * * *

"That, as a general rule, a tenant cannot dispute his landlord's title is well established and universally admitted, and neither citation of authority, nor discussion of the principle upon which it rests, is at all necessary, since it has been recognized at law for so great a length of time. * * * Whilst the plaintiff must go back to the government or to a common source in other cases, yet as to one estopped to deny his title, it is enough that he establishes the facts upon which the estoppel is supported. * * *

"The plaintiff is not required to show in the first instance a good title in himself, and the defendant cannot succeed by reason of an outstanding title with which he has no connection."

To the same effect see Henninger v. Pickren, Tex.Civ.App., 295 S.W. 264, writ dism.; King v. Maxey, Tex.Civ.App., 28 S.W. 401; Pynes v. Dodd, Tex.Civ.App., 121 S.W.2d 1045, writ ref.

In McKie v. Anderson, 78 Tex. 207, 14 S.W. 576, 577, relied on by appellants, the court stated: "When plaintiff proved that the defendant had attorned to him, and had not subsequently surrendered the possession, we think it then became incumbent upon the defendant to prove a superior title with which he was connected, in order to defeat plaintiff's recovery."

■ Even if Morris had been actively asserting title to a specific tract of land, he lost any rights he may have acquired during his tenancy by signing the written leases on January 1, 1937, October, 1946 and September 1, 1949. The signing of the leases and the acceptance of the tenancy relationship terminated any claim of limitation title he might have had.

It is true that at numerous places in his deposition Morris testified that Mrs. Gaillard told him to claim some of the land in the general enclosure which he had fenced, which included lands of other persons and approximately 150 acres. Mrs. Gaillard vehemently denied making any such statements. But on this appeal we are bound to accept Morris' story as true. It will be found, however, that each statement that Morris made wholly fails to point out any particular land that Mrs. Gaillard said Morris could claim and wholly fails to say that he could claim any of the land involved in this suit. The most that can be said for the statements Morris attributes to Mrs. Gaillard is that they referred to land in the 150 acre pasture which she did not claim.

Moreover, Morris repeatedly states throughout his deposition that he cannot put his finger on one acre of this land or any particular tract that he has been claiming or that he now claims. He has simply been claiming whatever the Beazleys did not claim or own. Certainly, under these facts there can be no actual and visible appropriation of land since the claimant is not asserting a right to any particular tract. Mhoon v. Cain, 77 Tex. 316, 14 S.W. 24; Forsod v. Golson, 77 Tex. 666, 14 S.W. 232.

In Wiess v. Goodhue, 46 Tex.Civ.App. 142, 102 S.W. 793, 797, this Court stated:

"If the claimant in fact claims it against the world, the statute is set in motion. If he merely claims it tentatively, subject to the result of inquiry as to whether it is within his boundaries, the claim is not adverse."

In Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 927, our Supreme Court quoted with approval from 2 C.J.S. Adverse Possession § 48, p. 566, as follows:

"To be effective as a means of acquiring title, the possession of an adverse claimant must be exclusive of the true owner. The owner must be wholly excluded from possession by claimant."

See also Riddle v. Vandiver, Tex.Civ. App., 225 S.W.2d 460; Vela v. Hester, Tex.Civ.App., 280 S.W.2d 369, ref., n. r. e.; Richey v. Miller, 142 Tex. 274, 177 S.W.2d 255, 170 A.L.R. 832; Wiley v. Bargman, Tex.Civ.App., 90 S.W. 1116; Hicks v. Southwestern Settlement & Development Corp., Tex.Civ.App., 214 S.W.2d 315, 316, ref., n. r. e.

In the latter case the court stated:

"Plaintiffs' proof did not fix either the location or the boundaries of Thomas Collier's actual possession with the certainty required to support a judgment for the land held in such possession, and under Plaintiffs' pleading, the trial court properly instructed a verdict in Defendants' behalf unless this proof exhibited a prima facie title to the entire league, vested in Thomas Collier."

Morris testified that he never repudiated the tenancy and never told the Beazleys he was claiming any part of their land. He could make no adverse claim to the land without giving notice to the Beazleys that he was doing so. In this case we think actual notice rather than mere constructive notice was required since the landlord and tenant were frequently in contact with each other. Brown v. Bickford, Tex.Civ.App., 237 S.W.2d 763, ref., n. r. e. See also Woodley v. Hughes, Tex.Civ.App., 252 S.W.2d 997; Park v. Sweeten, Tex. Civ.App., 270 S.W.2d 687, affirmed 154 Tex. 266, 276 S.W.2d 794.

Appellants assert that the court erred in admitting the Morris leases in evidence insofar as appellants Bordman and LaBauve are concerned since they do not hold the south ½ of Lot 8 under Morris, but claim to hold the same under the Christian heirs.

Bordman and LaBauve are in the same position in regard to their alleged title and contentions. With respect to whether they

were let into possession of the south ½ of Lot 8 by Morris, Bordman testified by deposition when asked how he got in to see the land, that he went to Morris who brought a key and unlocked a lock on the gate and let him in there and that it was through Morris he got in and out of the property. He also testified, however, that he didn't see how Mr. Morris actually put him in possession of the property since Morris didn't do more than show him the property and open the gate, and Morris wasn't claiming the land.

In view of our holding that appellees have perfected a good limitation title to all of the property in question, we find it unnecessary to determine whether Bordman and LaBauve are estopped to deny appellees' title to the south ½ of Lot 8 because of connection with the Morris tenancy, or to decide whether appellants or appellees have connected with the common source of title.

■ There is no merit in appellants' contention that the court erred in considering the written leases introduced by appellees because the same were not included in their abstract of title. The three written leases executed by Morris during his 27 years as appellees' tenant are attached to his deposition. No motion was made to strike such leases or Morris' testimony in his deposition concerning them. It is our opinion that the leases were admissible in evidence although not included in appellees' abstract of title, since they are not instruments by which appellees obtained title but merely constitute acknowledgements of tenancy showing the relationship of the parties. Barrera v. Duval County Ranch Company, Tex.Civ.App., 135 S.W.2d 518, 520, writ ref., is decisive of the question. The court stated:

"The tenancy agreements were admissible to refute appellant's claim of title by limitation and were not required to be included in appellee's abstract of title. Davis v. Cisneros, Tex.Civ.

App., 220 S.W. 298; Wolf v. Wilhelm, Tex.Civ.App., 146 S.W. 216."

Appellants next assert that the leases were void for want of description of the land leased. This contention is untenable since appellees are not claiming that they acquired any title under the leases which described the land as "approximately 50 acres on the San Jacinto River purchased by John Beazley, Sr. from John Farmer." They introduced the leases merely to show that Morris had repeatedly acknowledged that he was holding possession of the property as a tenant of the Beazleys. There is a great deal of evidence in the record clearly identifying the land leased. During all of the period from 1928 to 1956 Morris not only acknowledged his tenancy but he paid rent to the Beazleys on the land in controversy. We have hereinabove discussed the other matters argued by appellants under this Point.

■ We do not agree with appellants' final contention that there is no evidence to sustain the court's judgment for $50 damages. The annual rental of the property paid across the years was $20 or more, and the undisputed evidence indicates that the value of the land was in excess of $1,000 per acre.

■ Appellees' counter-assignment of error with respect to retaxing costs is in part overruled and in part sustained. Under the authority of Bruni v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, it was proper for the Court to tax against appellees, under the facts of this case, the compensation allowed the attorney ad litem appointed to represent the defendants cited by publication. We agree with appellees' contention that the Court erred in taxing any of the other costs against them. See Rules 131 and 141, Texas Rules of Civil Procedure. No good cause is stated on the record for adjudging the costs as was done. See also J. I. Case Threshing Mach. Co. v. Manes, Tex.Com.App.1923, 254 S.W. 929; Page

v. Key, Tex.Civ.App.1943, 175 S.W.2d 443, ref. w. o. m.

The judgment of the Trial Court is reformed by taxing the costs in the Trial Court against appellants, with the exception of the $1,500 attorney's fee allowed the attorney ad litem which is taxed against appellees; and, as reformed, it is affirmed.

Reformed and affirmed.

WOODRUFF, J., disqualified and not participating.

On Motions for Rehearing

WERLEIN, Justice.

Appellants in their motion for rehearing have called to our attention for the first time the fact that appellees did not object or except to the trial court's judgment with respect to the adjudication and taxing of costs in the trial court. Appellees, having failed to object in the trial court, may not raise such question for the first time upon appeal. Carmichael v. Williams, Tex.Civ.App., 268 S.W. 502, writ dism., w. o. j. Appellees' contention that the erroneous adjudication of costs by the trial court constitutes fundamental error is without merit. Their contention that by attaching to their motion for summary judgment a suggested form of decree in which costs were otherwise taxed they thereby directed the court's attention to their position and registered their objection to the court's decree in taxing costs, is also without merit. The suggested form of judgment attached to the motion for summary judgment was not in proper form nor was it considered, signed or acted upon by the trial court in any way insofar as

the record indicates. No objection was made to the court's action in not entering it and entering the judgment as was done. Appellees' counter-assignment of error with respect to retaxing costs is overruled, and the judgment of the trial court is in all things affirmed.

The motion for rehearing of Henry White, and appellees' motion for rehearing with respect to retaxing costs, and appellants' motion for rehearing, except as to taxing costs, are overruled.

On Second Motions for Rehearing

Appellants, by their second motion for rehearing, assert that this Court erred in rendering its opinion and judgment of October 20, 1960 for the reason that Chief Justice Bell and Associate Justice Woodruff are disqualified to sit in this case. As stated in our opinion of September 15, 1960, Associate Justice Woodruff is disqualified, but Chief Justice Bell is not disqualified although he did not for personal reasons participate in the opinion handed down herein on July 7, 1960. The motion filed by appellees praying that Chief Justice Bell recuse himself as being disqualified is again refused. It was refused by this Court on April 30, 1959 when Chief Justice Bell, although not disqualified, on his own motion recused himself from participating in the case. After Associate Justice Woodruff's disqualification came to the attention of the Court, Chief Justice Bell decided to fully participate herein notwithstanding his former intention not to do so.

Appellants' and Henry White's second motions for rehearing are overruled.

WOODRUFF, J., not participating.