**John B. LOZICA, Appellant,**

v.

**Oscar P. CELLI et al., Appellees.**

**No. 14090.**

Court of Civil Appeals of Texas.

Houston.

April 18, 1963.

Barker, Barker & Coltzer; Robert G. Coltzer, Galveston, for appellant

Armstrong, Bedford & Lambdin; Bart Hopkins, Galveston, for appellee.

WERLEIN, Justice.

Appellees, Oscar P. Celli et al., brought this trespass-to-try title suit against appellant, John B. Lozica, to settle and determine a boundary dispute and to recover title and possession of a strip of land in Galveston, Texas, approximately 47 feet in width running generally north and south between U. S. Highway 75 to the north and Offats Bayou to the south, and lying between a tract of land to the east admittedly owned by appellees, sometimes referred to as the Celli Tract, and a tract of land lying to the west admittedly owned by appellant, sometimes referred to as the Lapanovich Tract, such strip being denoted on the accompanying map as D–D'–C'–C. Appellant appeals

Exhibit

from the judgment of the trial court based upon the jury verdict determining that the boundary line as claimed by appellees, being the line marked D–C on said map, was the true boundary between the tracts of land owned by the parties, and that appellant was not entitled to title and possession of said strip of land under his plea of the ten year statute of limitation.

The evidence shows that in 1946 appellant sold to appellees a tract of land out of Outlot 516, Trimble and Lindsey Survey of Galveston County, Texas, lying generally in the southeast corner of said Outlot, and being described by metes and bounds as follows:

"BEGINNING at an iron rod located at the intersection of the East boundary line of said Lot No. 516 with the South side of the right-of-way line of Interstate Highway No. 45 (formerly known as Galveston County Causeway Road); THENCE South 69 degrees 16 minutes West 371.2 feet along said South right-of-way line of said Highway to an iron rod set for corner; THENCE South 25 degrees 18 minutes East at 345 feet, passing an iron rod, at 363 feet to the North Bank of Offats Bayou; THENCE in a generally northeasterly direction following the meanders of high tide of said North Bank of Offats Bayou to a point where same intersects the East boundary line of said Lot 516; THENCE North 25 degrees 18 minutes West along and with said East boundary line of said Lot 516, passing an iron rod at 52 feet and continuing in all 330 feet to the place of beginning, containing within the foregoing described limits 2.77 acres of land, more or less, together with all improvements thereon."

At the time of such sale appellant owned and still owns the tract of land lying in the southwest corner of said Outlot contiguous to the west boundary of the tract of land sold to appellees. According to the undisputed evidence there was at the time of the sale to appellees a line of concrete posts 6 inches in width, spaced approximately 10 feet apart along the line shown on said map as D'–C', extending from the Highway to the garage and south of the garage a fence of railroad ties or posts, and there was also a line of concrete posts and a retaining wall along the line marked A'–B' on the map. Before such sale appellant pointed out to appellees the lines of concrete posts as the west and east boundaries of the tract he was selling, and they took possession of such tract without making a survey, accepting the word of appellant that the tract as pointed out to them was the property described in their deed. Appellant contends that he remained in possession of that part of Lot 516 immediately west of the westerly line of concrete posts which he had pointed out to appellees as marking their property line. He asserts that he used the 47 feet in controversy which lay west of the concrete posts, being tract D–D'–C'–C on said map, and improved the same by raising the grade thereof, planting, leasing space for standards to support an outdoor bill board, and occupying a portion of the strip as a chicken yard and chicken house indicated on the map as I–II–III–IV.

In 1959 the Texas Highway Department began improving Highway 75 and desired to acquire a strip of land along the north line of the properties belonging to appellees and appellant, and indicated, based on its own survey, that the proper line dividing the properties of the parties was the line C–D on the map which is approximately 47 feet to the west of the line of concrete posts that the parties had always considered the line dividing the two properties. Shortly thereafter appellees filed this suit and appellant filed his cross-action in trespass-to-try title, claiming both the record title to the strip in question and also title under the ten year statute of limitation.

■ Appellant in his first point asserts that the evidence was insufficient to support the finding of the jury that the west line of the tract of land described in the deed from

John B. Lozica to Oscar P. Celli and Erode Celli dated June 3, 1946, indicated on said map as D-C, as surveyed, located and marked on the ground by Surveyor L. L. Lowery, is the true location of the west boundary line of said tract. We have read the entire statement of facts and examined the many exhibits introduced in evidence, and carefully considered the testimony of all the witnesses including that of the five surveyors who testified at the trial, and have concluded that such finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In re King's Estate, 1951, 150 Tex. 662, 244 S.W.2d 660; Tudor v. Tudor, 1958, 58 Tex. 559, 314 S.W.2d 793.

We overrule appellant's assignment that the evidence established as a matter of law that he had matured title to the strip of land in controversy under the ten year statute of limitation. The evidence with respect to the character and extent of appellant's claim consists largely of the testimony of appellant, an interested party. The evidence relative to the use of the strip of land in question and the exclusiveness thereof consists largely of the testimony of appellant and his wife.

Appellant also asserts that the finding of the jury to the effect that he had not matured a limitation title to such strip of land is against the great weight and preponderance of the evidence. Applying the test enunciated in In re King's Estate, supra, and Tudor v. Tudor, supra, we have concluded that this assignment should be sustained.

The uncontroverted evidence shows that when appellant conveyed the tract of land described in the deed to Celli, together with all improvements thereon, including John's Seafood Cafe and business, he pointed out what he understood to be the east and west boundaries of the tract as marked by the concrete posts. This was the tract appellant claimed he had bought from his uncle and which his uncle had surveyor Charlie Holt survey in 1921. After the sale to Celli in 1946, appellant still owned what is referred to as the Lapanovich Tract which he claims is bounded on the east by the concrete posts marking the west line of the Celli Tract. At no time did Celli question that the boundary line between the respective tracts as marked by the concrete posts was not the true boundary line until in 1959 when the State Highway Department made its survey and indicated that the boundary line was some 48 feet west of the line marked by such posts. Prior to such time Celli had always recognized the line as marked by the concrete posts as the west line of the tract he had bought from appellant.

Appellant testified in substance that at the time he conveyed the Celli Tract there was a fence along such line D'-C' consisting of the concrete posts with 2 X 4s on top of such posts, and with barbed wire and hog wire fastened to the posts and 2 X 4s, extending from the highway to the chicken enclosure and south of the chicken yard, a fence of railroad ties, which fences marked the west boundary line of the Celli Tract. At that time the posts which were approximately 6 feet in length extended 4 feet above the ground. In 1949 Celli hydraulically filled a strip of land to the east of the line of concrete posts about 50 feet in width and extending from the highway to the Bayou. At such time appellant filled from the westerly line of the concrete posts to the fence of the Lockhart property adjoining the Lapanovich Tract on the west. Celli paid for the filling east of the line of posts and appellant paid for the filling west of the line of posts. After such filling the concrete posts extended only about 2 feet above the ground. Appellant testified that the cost to him of the dredging was about $3,500.00. Appellant also testified that he continuously filled or raised the property west of the concrete post line from time to time after the sale to Celli and down to the present time. He put mainland soil along the water front and grew grass on the strip of land south of the chicken enclosure, and following the dredging, he brought fill in by the wagon load whenever he could get it, placing most of such fill on the area

from the chicken enclosure shown on the map as I–II–III–IV to the Bayou. The property south of the chicken enclosure was filled to a height of some 10 feet. The dredge had filled in about 3 feet, and appellant filled in 5 or more feet over the dredge fill on the strip south of the chicken enclosure.

Appellant testified also that he built a seawall or a bulkhead south of the chicken enclosure, extending from the concrete post line west to Lockhart's fence; that the cost of the dredging and the filling was better than $20,000.00; that there was, and continued to be for more than ten years, a hole south of the chicken enclosure and west of the post line in which the Cellis burned trash with appellant's permission, Mr. Celli having asked if he could burn trash there; that the fences along the concrete posts and the fence of railroad ties or posts south of the garage were torn down in 1949 at the time of the dredging and there was no fence either north or south of the chicken fence or enclosure from 1949 to 1959; that he maintained on the line marked by the concrete posts and railroad ties between the garage and the Bayou a "Keep Out" sign to keep people from going on his property west of the concrete post line, which sign was there when he sold to Celli and has remained to the present time; and that in 1938 or 1939, under a lease from him, a large sign some 20 X 40 feet was put up and maintained ever since close to the Highway and extending over on the land in controversy.

Appellant testified that the Lapanovich Tract extended to the concrete posts, and that the land he was claiming was from the line of the concrete posts to the Lockhart fence on the west. He claimed all of the land west of the concrete posts whether it was called the Lapanovich or the Celli Tract, and whether or not it was included in his deed to Celli. He further testified that from the southwest corner of the Celli garage, the back of which is in line with the concrete posts, he had a fence of railroad ties and barbed wire extending south. This fence was destroyed in 1949 but the sign saying "Private Property" had been there since 1921 and remained after the filling in 1949. In the area of the chicken yard (I–II–III–IV on the map) he claimed just the part lying west of the concrete post line. He had in that area a chicken yard and at times a hog pen, and a little garden. The chicken house and fences have been continuously on the strip in controversy for much longer than ten years. When the old chicken house burned down in 1948, appellant started within two weeks to build another one on the strip now in controversy without protest from Celli.

John B. Lozica, Jr., the son of appellant, 25 years of age, testified that his father made a seawall of brick, stone and rocks brought in by truck, and that the fill brought in extended over to the westerly line of the concrete posts; that they have always kept the property closed to the public and that his father is the only one who could permit people to come on the land; that from the garage to the chicken house is a fence in line with the concrete posts, made of sheets of tin which the Cellis kept up, and that the brick footings under the tin have been there as long as he remembers; and that the high fill, which is several feet higher than the Celli tract, is between the chicken enclosure and the seawall or breakwater and extends west from the line marked by the posts.

Mrs. Lozica testified that before the sale to the Celli brothers, her chicken pen was on the east of the westerly line of concrete posts, and they kept them there about a year after the sale; that when Celli told them he was getting some chickens they built a new chicken house on the west side of the concrete posts which backed up to such line; that her husband spent lots of money fixing the property and still does, and that he made a wharf on the water front to keep the sand in place and protect the property; that the public did not use the property west of the line of concrete posts and that since selling to the Cellis her husband had complete control and management of the land west there-

of; that when the old chicken house burned they built a new one; that a fence runs from the chicken house to the garage, and that she had a little garden west of the line of posts and north of the chicken house; and that the fence from the chicken house to the southwest corner of the garage and the fence to the east of it have been there all of the time.

Oscar P. Celli testified in substance that he did not have the property surveyed at the time of his purchase; that appellant pointed out the east and west lines of the tract and said that the retaining wall on the east was the east boundary and that the line of concrete posts on the west was the west boundary; that the posts ran just part of the way and that he did not recall any fence but only the concrete posts; that he did not know the true location of the west boundary of his tract of land, but believed it was the line of posts pointed out to him by appellant Lozica; that the only structure on the strip of land in question in 1946 was the chicken house and fences; that in 1949 he and his brother placed hydraulic fill on the portion of the property just east of the concrete posts; that Lozica filled his property at the time the Cellis did; and that he imagined that Lozica paid the cost of filling the property west of the concrete posts; that the first dispute relating to the location of the west line was in 1959 which was the time the Highway Department made its survey; that he had some ducks and chickens and they roamed over all the area in dispute, and that they used a little rectangular area north of the garage and east of the concrete posts for their ducks and chickens. He further testified that the back of the garage was on the common boundary line as he then understood it. The garage has its opening to the east; that the back of Mr. Lozica's chicken yard marked the line part of the way and the back of the Celli garage marked the line part of the way as he thought the boundary was and as Lozica had pointed it out; that there were some old railroad ties on the line from the garage

to the Bayou, and there was a ditch to the east of the concrete post line; and that appellant had let him burn trash in the hole south of the chicken enclosure and garage.

■ Appellees take the position that appellant may not acquire the strip of land in question by limitation, since appellant had no intention to claim any land beyond the true boundary line. In this connection appellees assert, as indicated in Bruce v. Washington, 1891, 80 Tex. 368, 15 S.W. 1104, that the possession of a claimant is not adverse if he enters upon land under the mistaken belief that it is included in his deed and with no intention to claim or hold the same adversely to the true owner if it is not included in the deed. It is our view that in the instant case the evidence does not show an intention not to claim the land in controversy if not included in the Lapanovich Tract which had been acquired by appellant prior to the deed to the Cellis.

It is true that the evidence, with respect to appellant's intention to claim the land to the line of concrete posts, consists largely of the testimony of appellant and his wife, both interested parties. Their testimony is corroborated, however, not only by their son, John B. Lozica, Jr., and by the use made of the property, but also by appellee, Oscar Celli, who testified that appellant had pointed out the dividing line between the Celli and Lapanovich Tracts, and had told him that he, Lozica, owned the land west of the line of concrete posts and that Celli owned the land east thereof.

■ Moreover, we are of the opinion that the testimony of appellant with respect to what he claimed is clear and positive and that there are no circumstances in evidence tending to discredit or impeach his testimony. Owen Development Co. v. Calvert, 1957, 157 Tex. 212, 302 S.W.2d 640. Although at one point in his testimony on cross-examination, appellant testified that he never claimed anything except the Lapanovich Tract that is described in the deed from Sealy to Madeline Lapanovich subse-

quent to the time he sold to the Cellis, he had previously testified that the Lapanovich property was the property lying west of the line of concrete posts, and he repeatedly testified that he claimed all the property extending west from the line of concrete posts to the Lockhart fence on the west line of the Lapanovich Tract. He further testified on cross-examination as follows:

"MR. BEDFORD:

"So—I mean, was it ever your intention, at any time, to claim any of the land that you sold and deeded and conveyed to the Cellis?

"A. I claim it west side concrete posts—all.

"Q. Then you do—then it was your intent to claim the property that was west of the concrete posts—is that what you are trying to say—whether you deeded it to them or not—you intended to claim that—is that right?

"A. Correct."

In view of all of appellant's testimony and the very clear statements as to what he was claiming, we do not think the single statement made by him that he was not claiming anything but the tract described in the Lapanovich deed, raises an issue as to the adverse nature of his claim, especially since he always believed the Lapanovich Tract extended to the line marked by the concrete posts. In any event, such statement did not preclude him from claiming the land to the line of concrete posts. Goslin v. Beazley, Tex.Civ.App., 339 S.W.2d 689, 695, writ ref., n. r. e., and authorities cited.

Appellees also contend that appellant's use of the open and unenclosed areas of the strip of land in controversy, north and south of the chicken yard, was not exclusive. The only evidence relied upon by appellees to show that appellant's possession was not exclusive was testimony to the effect that appellees' chickens and ducks roamed over the land north and south of appellant's chicken enclosure. It is our view that such use was permissive and did not destroy the exclusiveness of appellant's possession. Appellant's chickens as well as appellees' chickens ranged over the tracts belonging to both parties without discrimination.

In determining whether the possession of such strip of land was exclusive, all of the evidence must be considered. The strip of land in controversy was definitely marked by the concrete posts, the chicken house, garage, and fences of the chicken enclosure, and the fill placed thereon which elevated the strip of land several feet above the Celli property south of the chicken enclosure. A large bill board north of the chicken enclosure had been erected more than ten years prior to the filing of suit and had been continuously maintained, appellant collecting rentals therefrom. The "Keep Out" sign south of the chicken enclosure had also been maintained for more than the statutory period of limitation. Appellant at all times asserted dominion over the entire tract.

We shall not undertake to set out further evidence with respect to the use of the strip of land in controversy and the exclusiveness of appellant's possession. We think that the evidence hereinabove set out is such that the finding of the jury with respect to appellant's possession and the exclusiveness thereof in finding against appellant on his plea of the ten year statute of limitation, is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In Re King's Estate, supra.

Appellant next asserts that the evidence establishes as a matter of law that he had matured title under the ten year statute of limitation to the strip of land in controversy which has been enclosed as a chicken yard. Although we are inclined to think that the evidence establishes as a matter of law that appellant's use and possession

of the chicken enclosure was exclusive for the required statutory period, we shall not pass upon this assignment since we have considered such possession and use as one of the principal uses of the land in controversy in arriving at our holding with respect to the entire strip.

■ It is our view that appellant's cause of action with respect to his limitation claim to the strip of land in controversy involves issues not necessarily pertinent to the holding of the court establishing the true boundary line between the Celli Tract and the tract retained by appellant, and that such cause of action may be tried independently and without regard to the true boundary line or a determination thereof, so that the judgment of the trial court with respect to the limitation title and adverse possession may be reversed and remanded without reversing the judgment establishing and fixing the true boundary line between the two tracts of land belonging to the respective parties. In Durham v. Scrivener, Tex.Com. App.1925, 270 S.W. 161, the court stated:

"We also think the issue as to what damages or recovery should be awarded for the wrongful conveyance of a portion of such land is severable from the issue as to what the recovery should be as to wrongful conveyance as to other portions to different parties.

"After a fair and impartial trial has been had in the trial court on the issue involving the cancellation of the deeds, it would indeed be unfortunate if the rules of procedure governing appellate courts were such that, without any apparent reason therefor, the trial court should again be required to determine this issue."

We hold that the issues are severable, and that the judgment of the trial court should be reversed and a new trial ordered only as to appellant's claim to the land by limitation under the ten year statute, and otherwise affirmed. Rule 434, Texas Rules of Civil Procedure; Tillman v. Mahaffey, Tex.Civ. App., 252 S.W.2d 255, ref., n. r. e.; Page v. Hancock, Tex.Civ.App., 200 S.W.2d 421, ref., n. r. e.; Miller v. L. Wolff Mfg. Co., Tex.Civ.App., 225 S.W. 212.

Affirmed in part; reversed and remanded in part.